**ANIMAL LEGAL DEFENSE FUND, et al., Plaintiffs,**

v.

**The SECRETARY OF AGRICULTURE, et al., Defendants.**

**Civ. A. No. 91–1328 (CRR).**

United States District Court, District of Columbia.

Feb. 25, 1993.

Valerie J. Stanley, Galvin, Stanley & Hazard, Washington, DC, for plaintiffs.

John Schuman, Atty., U.S. Dept. of Justice, Civ. Div., with whom Thomas Millet, Atty., U.S. Dept. of Justice, Civ. Div., Stuart M. Gerson, Asst. Atty. Gen., and Jay B. Stephens, U.S. Atty., Washington, DC, for defendants.

CHARLES R. RICHEY, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................... 884
II. BACKGROUND ...................................................... 885
III. DISCUSSION ...................................................... 886
 A. THE USDA'S REGULATIONS FOR DOG EXERCISE VIOLATE THE APA BECAUSE THE REGULATIONS DO NOT PROVIDE THE MINIMUM STANDARDS REQUIRED BY CONGRESS.................... 886
 B. THE USDA'S REGULATIONS REGARDING THE PSYCHOLOGICAL WELL BEING OF NON–HUMAN PRIMATES VIOLATE THE APA. 888
 1. The Regulations violate the APA because they do not include the minimum standards intended by Congress....................... 888
 2. The Regulations do not address group housing for non-human primates in a manner consistent with the agency's original findings, later rejected by the Defendants................................. 889
 3. The Regulations regarding minimum requirements for non-human primate cages violate the APA in that they are arbitrary and capricious because they are inconsistent with the USDA's original findings...................................................... 889
 C. THE DEFENDANTS DELAY IN REQUIRING NEW CAGES SIZES UNDER THE ACT UNTIL FEBRUARY, 1994, VIOLATES THE APA BECAUSE IT IS AGENCY ACTION UNLAWFULLY WITHHELD. ... 890
 D. THE REGULATIONS VIOLATE THE APA BECAUSE IT PERMITS THE USE OF SPECIAL CAGES TO AVOID COMPLIANCE WITH THE ACT. ....................................................... 891
 E. THE REGULATIONS PROMULGATED BY THE DEFENDANT SECRETARY DO NOT VIOLATE THE FOIA BECAUSE THE DEFENDANTS HAVE ACTED IN A MANNER THAT AVOIDS THE RIGHT OF ACCESS BY THE PUBLIC TO INFORMATION REGARDING THE CONDUCT OF THE REGULATED ENTITIES PERTAINING TO THE TREATMENT OF ANIMALS UNDER THE ACT. ................... 891
IV. CONCLUSION ...................................................... 892

## I. INTRODUCTION

The Plaintiffs, two animal welfare groups and several individuals, allege that the Defendants, including the United States Department of Agriculture ("USDA") and the former Secretary of the

USDA ("Secretary"), have violated the Improved Standards for Laboratory Animals Act.[1] 7 U.S.C. § 2143 *et seq.* This statute, enacted in 1985, is an amendment to the Animal Welfare Act of 1966. Pub.L. No. 89–544, 80 Stat. 350 (1966). Thus, the use of animals and their humane treatment in the field of research as well as other areas of our national life has been the subject of legislative concern for over 25 years.

The Plaintiffs allege that the final regulations issued by the Defendants under the Animal Welfare Act, as amended in 1985, are arbitrary and capricious and contrary to law under the Administrative Procedure Act. 5 U.S.C. § 551, *et seq.* The parties have filed cross motions for summary judgment.

After carefully considering the parties' motions for summary judgment, the supporting and opposing memoranda, the arguments of counsel, the underlying law, and the entire record in this case, the Court concludes that the Plaintiffs have successfully demonstrated that the Defendants violated the Administrative Procedure Act by enacting regulations that do not comply with the mandate of Congress as set forth in the Animal Welfare Act, as amended. Accordingly, the Court shall grant the Plaintiffs' motion for summary judgment, and shall deny the Defendants' motion for summary judgment.

## II. BACKGROUND

In 1985, Congress passed the Improved Standards for Laboratory Animals Act ("Act"),[2] which is an amendment to the Animal Welfare Act ("AWA"). *See* 7 U.S.C. § 2131 *et seq.*[3] The Act is designed to provide for the "humane handling, care, treatment and transportation of animals by dealers, research facilities and exhibitors." 7 U.S.C. § 2143(a)(1). Congress required

the Secretary to promulgate standards in accordance with the Act to ensure the well being and humane treatment of animals, notwithstanding the importance of research. *Id.* § 2143(a)(1). The relevant portions of the Act provide:

(2) *The standards* [to be promulgated by the Secretary] *shall include minimum requirements*—

(A) for handling, housing, feeding, watering, sanitation, ventilation, shelter from extremes of weather and temperatures, adequate veterinary care, and separation by species where the Secretary finds necessary *for humane handling, care, or treatment of animals;* and

(B) *for exercise of dogs,* as determined by an attending veterinarian in accordance with general standards promulgated by the Secretary, *and for a physical environment adequate to promote the psychological well-being of primates.*

(3) In addition to the requirements under paragraph (2), the standards ... shall, with respect to animals in research facilities, include requirements ... for animal care, treatment, and practices in experimental procedures....

*Id.* (emphasis added). The Act also requires that each research facility establish a Committee ("Committee") to assess animal care and treatment through semiannual inspections. *Id.* § 2143(b)(1).

The Plaintiffs contend that the final regulations issued by the Secretary do not comply with the 1985 amendments to the AWA and are arbitrary and capricious under the Administrative Procedure Act ("APA"). 5 U.S.C. § 551, *et seq.* More specifically, the Plaintiffs challenge: 1) the lack of minimum requirements in the regulations regarding dog exercise and nonhuman primate psychological well being; 2) the amount of delay permitted under the

---

1. Pursuant to Rule 25(d), the Court shall substitute the Secretary of Agriculture as a Defendant in this action in place of Edward R. Madigan, the former Secretary who has left office. Fed. R.Civ.P. 25(d).

2. The Improved Standards for Laboratory Animals Act was enacted on December 23, 1985 as Subtitle F of the Food Security Act of 1985, Pub.L. No. 99–198 §§ 1751–59 (1985).

3. The AWA was enacted in 1966, Pub.L. No. 89–544, 80 Stat. 350 (1966). It was amended in 1970, Pub.L. No. 91–579, 84 Stat. 1560 (1970), and was amended again in 1976, Pub.L. No. 94–279, 90 Stat. 417 (1976), and 1985, Pub.L. No. 99–198, 99 Stat. 1645 (1985).

regulations in complying with the new cage requirements; 3) the fact that the new regulations' provision for special cage designs permit regulated entities to evade existing minimum requirements for cage sizes; and 4) the regulations' provision that allows regulated entities to store their plans for dog exercise and non-human primate enrichment on-site, where the plans would not be subject to Freedom of Information Act requests by members of the public. *See* 5 U.S.C. § 552.

The Defendants make the bald argument that they received a broad mandate from Congress under the 1985 amendments and the regulations are properly within that mandate. They contend that the Act's call for "minimum requirements" does not require absolute numerical criteria.

■ In examining the validity of regulations promulgated by an agency, a reviewing court shall ordinarily consider only those materials before the agency when it made its decision. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985).[4] In this case, the parties have agreed on the sections of the administrative record that the Court should consider in making its determination. *See Walter O. Boswell Memorial Hospital v. Heckler*, 749 F.2d 788 (D.C.Cir.1984).

## III. DISCUSSION

### A. THE USDA'S REGULATIONS FOR DOG EXERCISE VIOLATE THE APA BECAUSE THE REGULATIONS DO NOT PROVIDE THE MINIMUM STANDARDS REQUIRED BY CONGRESS.

■ Under the APA, the reviewing court shall "compel [agency] action unlawfully

withheld or unreasonably delayed," 5 U.S.C. § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with the law." 5 U.S.C. § 706(2)(A). The Court finds that the Defendants' regulations regarding dog exercise are arbitrary and capricious under the APA.

■ The regulations promulgated by the former Secretary Madigan and his Department under the Act provide that "[t]he frequency, method, and duration of the opportunity for [dog] exercise shall be determined by the attending veterinarian and, at research facilities, in consultation with and approval by the Committee." 9 C.F.R. § 3.80(c)(1) (1992).[5] Here, the Act requires the Secretary to promulgate "minimum requirements" for the exercise of dogs. 7 U.S.C. § 2143(a)(2).[6] However, the Defendants' regulations give the on-site veterinarian and, in some cases, the Committee the discretion to make the decisions regarding the exercise of dogs and the regulations improperly leave the Act open to a variety of interpretations. For example, the regulations do not define critical terms regarding dog exercise. Therefore, while the regulations require that dogs housed individually "must be provided the opportunity for exercise regularly" 9 C.F.R. § 3.80(a), the term "regularly" is not defined. This could, to one person, be only once a month or perhaps even two weeks and, if so, would not comply with the clear mandate of Congress. As a result, there is no guarantee that even minimum requirements will exist within regulated entities

4. For this reason, the Court shall deny the Plaintiffs' Motion to file Exhibits Under Seal. These Exhibits, and the affidavit of William Strauss submitted with the Plaintiffs' Motion for Summary Judgment, are materials outside the Administrative Record and the Plaintiff has not demonstrated an adequate reason why these materials should be considered as part of this case. *Edison Electric Institute v. OSHA*, 849 F.2d 611, 617–18 (D.C.Cir.1988).

5. Any exemption from these exercise requirements for reasons of health must be made by

the attending veterinarian, *id.* § 3.80(d)(1), and such exemptions must be reviewed every 30 days unless the dog's condition is permanent. *Id.*

6. The word "minimum" is generally understood as "representing the lowest possible amount or degree permissible or attainable." American Heritage Dictionary (New College Ed.1976). A requirement is defined as "something required; a prerequisite." *Id.*

and compliance with the Act will depend on the good faith compliance by regulated entities. This is contrary to the Act's clear mandate that the Secretary, and not the regulated entity, establish minimum requirements in this area. 7 U.S.C. § 2143(a)(2). Where Congressional intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–3, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).[7]

The Defendants argue that the delegation to the on-site veterinarian is permissible because the Act specifically mentions the attending veterinarian as playing a key role in the proper exercise of dogs. *See* 7 U.S.C. § 2143(a)(2)(B). However, this argument is unpersuasive because the Act only gives the on-site veterinarian a non-decisive role to play in the context of the minimum requirements to be set by the Secretary. *Id.* In real world terms, if the veterinarian did what he or she was required by the law, he or she might well be replaced or not paid.

For these reasons, it is clear to the Court that these regulations for dog exercise do not fulfill even the minimal requirements set out by the plain language of the statute for the humane handling, care, and treatment of animals. *Fertilizer Institute v. EPA*, 935 F.2d 1303, 1309 (D.C.Cir.1991) (when an agency attempts to give meaning

to a statute that is plain on its face, it must give effect to the intent of Congress).[8]

■ In addition, the agency's explanations and rational for adopting these wide-open regulations do not represent reasoned decision making in light of the statutory mandate. The Defendants, in their initial proposed regulations, concluded that "[t]he consensus of [its] veterinarians with training and experience in the care of dogs is that 30 minutes of daily exercise is a reasonable minimum for maintenance of a dog's health and well being." Administrative Record ("A.R.") at 576 (54 Fed.Reg. 10905 (1989)). The Defendants later argued that minimum provisions would not take into account any variation among the type of dogs involved and would be too restrictive of diverse facilities. A.R. at 1899 (56 Fed.Reg. 6447 (1991)). These considerations may well be based more on the almighty dollar than the welfare of animals, and do not excuse the former Secretary or authorize the Defendants to ignore the Act's plain mandate to set minimum requirements for the humane care and treatment of animals.[9] Thus, the Defendants rational for adopting these regulations does not represent "a reasoned explanation" for its decision. *See Farmers Union Cent. Exchange, Inc. v. FERC*, 734 F.2d 1486, 1511 (D.C.Cir.1984). Under the APA, an agency action must be set aside if it fails to offer an adequate explanation for its action or fails to consider a relevant

7. A court must construe a statute "from the plain meaning of statutory terms absent clear and persuasive evidence of legislative intent." *Nichols v. Board of Trustees of Asbestos Workers Local 24 Pension Plan*, 835 F.2d 881, 892 n. 86 (D.C.Cir.1987) (citations omitted); *see also Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In determining the plain meaning of the statute, the court must look to the particular statutory language, and the *language and design of the statute as a whole. K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (emphasis added).

8. The Defendants contend that Congress' used the word "standards" in the Act which does not require "numerical standards" and that the word "standard" is synonymous with the term "regulation." Defendants' Memorandum in Op-

position at 7–8. The Court is not convinced as it understands the Congressional command for "minimum requirements" to require more than simply the promulgation of regulations. To believe the Government in this regard would be to assert a belief in the tooth fairy.

9. The Defendants rely on the portion of the Administrative Record that notes "[b]ecause of the wide variation in behavior characteristics of different breeds, and of individual animals within breeds, we do not believe that our [originally] proposed "across-the-board" standards are the most appropriate way of ensuring that dogs in regulated facilities receive sufficient opportunity for exercise." A.R. 1899; 56 F.R. 6426, 6447 (1991). However, the original proposal was far more consonant with the Act than the Defendants' final regulations, which have no criteria or specifications and which will vary from entity to entity.

factor in reaching its decision, *see International Fabricare Institute v. EPA*, 972 F.2d 384, 389 (D.C.Cir.1992); *Federal Election Comm'n v. Rose*, 806 F.2d 1081, 1089 (D.C.Cir.1986).

Therefore, for all these reasons, the Court finds that the USDA's regulations unreasonably defer to the on-site veterinarian in regards to dog exercise and do not provide the minimum requirements Congress mandated in the Act.[10] "A dog is man's best friend" is an old adage which the Defendants have either forgotten or decided to ignore.[11] Hopefully, the new Secretary will ensure that the bureaucracy he inherits and the special interest groups with which he must contend will be forced to remember this sentiment and comply with the law.

B. THE USDA'S REGULATIONS RE-GARDING THE PSYCHOLOGICAL WELL BEING OF NON-HUMAN PRIMATES VIOLATE THE APA.

1. The Regulations violate the APA because they do not include the minimum standards intended by Congress.

■ The Court finds that the Defendants' regulations on non-human primate enrichment also violate the APA because they ignore the plain language of the statute, which requires the Secretary to establish minimum standards in the area of psychological enrichment of non-human primates, which are "any non-human member of the highest order of mammals including prosimians, monkeys, and apes," 9 C.F.R. § 1.1, and are also a valuable resource to humankind.

The regulations regarding the psychological enrichment of non-human primates, many of whom have the distinctive qualities of human beings, provide that the regulated entity devise a plan to foster this goal "in accordance with the currently accepted professional standards as cited in appropriate professional journals or reference guides, and as directed by the attending veterinarian." 9 C.F.R. § 3.81; A.R. at 1463 (55 Fed.Reg. 33525 (1990)). The regulations require that each plan address certain topics, including social grouping and environmental enrichment. 9 C.F.R. § 3.81(a) and (b).

However, these regulations do not include any minimum requirements or standards; the regulations merely require that the plan must be in accordance with "generally accepted professional standards." *Id.* What these standards are and how they are arrived at is not adequately explained.

The Defendants argue that general guidelines, in conjunction with the oversight of the on-site veterinarian and the Committee, is sufficient to provide for the psychological enrichment of these valuable near-human primates. However, just as in the case of the Secretary's regulations for dog exercise, the Court finds that the Defendants' regulations violate the clear and plain language of the mandate of Congress here involved and the requirements of law, which directs the Secretary to promulgate minimum requirements. 7 U.S.C. § 2143(a)(2).[12] The Court also notes that Congress required these minimum requirements in light of its desire to provide humane treatment to these wonderful animals

---

10. The Plaintiffs also emphasize the fact that the regulations do not require the regulated entities to maintain records of dog exercise to ensure compliance. The Defendants contend that such records are not required by the Act and are not necessary for its enforcement because each regulated entity must keep a plan for dog exercise on-site. However, without a precise standard set down in the regulations, no general plan for dog exercise can pass muster. This again violates the APA.

11. *See The MacMillan Book of Proverbs, Maxims, and Famous Phrases* 607 (1976) ("The best friend a man has in the world. . . . is his dog.") (*quoting* Senator George G. Vest).

12. The fact that the Defendants' regulations for primate enrichment delegate the power to set standards in this area to the on-site veterinarian and the Committee is particularly troubling and wrong because the Act does not provide any role for the on-site veterinarian or the Committee in setting minimum requirements. 7 U.S.C. § 2143(a)(2)(B).

and also to assure "more confidence" in the results of the experiments for which they are used. 131 Cong.Rec. S14,249 (daily ed. Oct. 28, 1985) (statement of Sen. Melcher).[13]

2. The Regulations do not address *group housing* for non-human primates in a manner consistent with the agency's original findings, later rejected by the Defendants.

██ In addition, the regulations violate the APA because they are inconsistent with the agency's own original judgment on the psychological enrichment of non-human primates, including social grouping and cage sizes. The Administrative Record shows that the agency and the commentators on the proposed guidelines agreed that the social deprivation is psychologically debilitating to non-human primates and that group housing for non-human primates was the best way to avoid this problem.[14] A.R. at 588 (54 Fed.Reg. 10837 (1989)). In fact, the Defendants state that it is their expectation that non-human primates will be housed in groups. *Id.* at 1924 (56 Fed. Reg. 6472 (1991)). However, despite these findings, nothing in the regulations requires group housing nor is any explanation given as to why group housing is not required under the regulations. Moreover, without a specific standard or regulation no one can be sure that the alleged "expectation" of the Defendants will be carried out. Accordingly, the regulations are arbitrary and capricious under the APA because the Defendants have not provided a "reasoned explanation" for their failure to provide group housing for non-human primates. *See Farmers Union Cent. Exchange, Inc. v. FERC,* 734 F.2d 1486, 1511 (D.C.Cir. 1984).

3. The Regulations regarding minimum requirements for *non-human primate cages* violate the APA in that they are arbitrary and capricious because they are inconsistent with the USDA's original findings.

[9] The Plaintiffs also challenge the cage sizes for non-human primates to be implemented in February, 1994. The Plaintiffs correctly argue that the regulations are inconsistent with the agency's own original findings on the adequacy of non-human primate enclosures and point specifically to the agency's initial proposed regulations as evidence of this.

In March 1989, the agency found that non-human primates "need greater space than that required under the current regulations, so they can engage in species-typical activity that is necessary for their psychological well-being." A.R. at 590 (54 Fed.Reg. 10919 (1989)).[15] The agency also specifically disagreed with some of the space requirements used in the National Institutes of Health ("NIH") Guide, which governs non-human primate care in research facilities funded by the Department of Health and Human Services. *Id.* However, in the final regulations the agency changed course and concluded that the existing space requirements used by the NIH were adequate. 9 C.F.R. § 3.80 and 3.81.

The Defendants contends that "the issue of what constitutes 'adequate space' can be meaningfully addressed only in the context of other enrichments of a [non-human] primate's environment." A.R. at 1431 (55 Fed.Reg. 33493 (1990)). However, the agency's initial proposal, which provided for additional space, made such a recommendation "in light of the social interaction [non-human primates] receive and the *additional environmental enhancements that must also be provided.*" A.R. at 590 (54 Fed.Reg. 10919 (1989)) (emphasis added).

---

**13.** Such a concern echoes the Congressional finding that "measures which help meet the public concern for laboratory animal care and treatment are important in assuring that research will continue to progress." Pub.L. No. 99–198 § 1751(4) (1985).

**14.** In fact, the agency's initial proposed regulations required the social grouping of primates and permitted exceptions to this rule where the attending veterinarian determined it was contrary to the health of the non-human primate. A.R. at 615 (54 Fed.Reg. 10944 (1989)).

**15.** The agency made such findings based upon recommendations received from the "expert committee on nonhuman primates." A.R. at 590 (54 Fed.Reg. 10919 (1989)).

The Defendants also argue the regulations use of NIH guidelines is permissible in light· of the desire to avoid conflicting regulations in this area. S.Rep. No. 145, 99th Cong., 1st Sess. 595, 598 (1985), U.S.Code Cong. & Admin.News 1985, pp. 1103. However, the Court is not convinced that the concern with respect to differing departmental approaches within the Executive Branch, which are not expressed in the statute itself, should override the goals and purpose of the Act consistent with the agency's original findings and expertise. Therefore, under these circumstances, the Court finds that the final regulations now before the Court regarding non-human primate enclosures are arbitrary and capricious.

## C. THE DEFENDANTS' DELAY IN REQUIRING NEW CAGES SIZES UNDER THE ACT UNTIL FEBRUARY, 1994, VIOLATES THE APA BECAUSE IT IS AGENCY ACTION UNLAWFULLY WITHHELD.

██ The Defendants' regulations provide, starting in February 1994, for new cage requirements for a variety of animals. *See* 9 C.F.R. § 3.80 (1992). The Court finds that such a phase-in period is unlawful because it is agency action unlawfully withheld under the APA. *See Sierra Club v. Thomas,* 828 F.2d 783, 793–95 (D.C.Cir. 1987).

The APA directs agencies to conclude matters presented to them in a reasonable time and directs reviewing courts to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). The Act at issue here was passed by Congress in 1985. The Defendants contend that the delay until February 1994, a three year delay from the promulgation of the regulations in 1991, to comply with new cage regulations is reasonable because it gave entities time to conform to the new regulations. They further also defend the phase in period by arguing that it is preferable to requiring the new cages immediately and including provisions for case-by-case variances.

The Court simply does not agree and notes that, while this is typical of much Executive Branch inaction in matters of grave national concern, the Article III Courts were not created by our founding fathers to rubber stamp such failures to act over indefinite periods while bloated bureaucrats contend with each other and the special interest groups who transfer their efforts from the Legislative Branch to the Executive Branch, after a bill has passed. In fact, former Judge J. Skelly Wright of our Court of Appeals once said, in essence, that the regulators in Washington are regulated by the regulated. *Moss v. CAB,* 430 F.2d 891, 892 (D.C.Cir.1970).[16] This may well be the case here. If this is so here, then something needs to be done to change the process.

The Court cannot condone a prolonged phase-in period for the new cage requirements where the delay from the enactment of the legislation until the ultimate benefit will take 9 years. *Id.; see also Adams v. Richardson,* 480 F.2d 1159 (D.C.Cir.1973). Because the case involves animals as opposed to human beings is not a legitimate excuse for such inordinate delay. If the Court approved or ignored such a long delay, it would be condoning a breach of duty on the Defendants' part. In fact, in 1976, after the Congress gave the Commerce Department two years to develop proper regulations which it had not done regarding the tuna fishing industry and the resulting killing of porpoise, this Court gave that Department a short period to develop proper regulations, which the agency accomplished. *Committee for Humane Legislation, Inc. v. Richardson,* 414 F.Supp. 297 (D.D.C.1976), *aff'd,* 540 F.2d 1141.

In addition, the Defendants' delay in this case is based on impermissible considerations and, is, therefore, an abuse of discretion under the APA. *See Edwards v. Dis-*

---

**16.** In that case, Judge Wright said "[T]his appeal presents the recurring question which has plagued public regulation of industry: whether the regulatory agency is unduly oriented toward the interests of the industry it is designed to regulate, rather than the public interest it is designed to protect." *Id.*

*trict of Columbia,* 821 F.2d 651, 670–71 (D.C.Cir.1987). The Defendants feebly contend that such a delay is reasonable given cost considerations for regulated entities to comply with the new cage requirements. *See* A.R. at 575 (54 Fed.Reg. 10904 (1989)). However, the Defendants can point to no authority in the statute to support its contention that cost was a major concern of Congress in the Act. In fact, the agency recognized that cost considerations might not be compatible with the Act's goal of a socially acceptable level of animal welfare. A.R. at 1962 (*Final regulatory Impact and Regulatory Flexibility Analysis of APHIS Animal Welfare Regulation, Part 3, Standards, Subparts A and D,* USDA, at 1 (January 1991)). In addition, this three year delay is contrary to the agency's own preliminary finding in 1990 that, "in light of availability of primary enclosures meeting our proposed minimum space standards, we do not believe that it is necessary or appropriate to provide for variances from the proposed provisions." A.R. at 1405 (55 Fed.Reg. 33467 (1990)). Finally, the delay is contrary to the Defendants' own original finding that existing minimum space requirements were inadequate. *See* A.R. at 1401 (55 Fed.Reg. 33463 (1990)); A.R. at 590 (54 Fed.Reg. 10919 (1989)).

For these reasons, the Court believes that the delay provided for in the regulations constitutes agency action unlawfully withheld and is arbitrary and capricious.

### D. THE REGULATIONS VIOLATE THE APA BECAUSE IT PERMITS THE USE OF SPECIAL CAGES TO AVOID COMPLIANCE WITH THE ACT.

 The Plaintiffs complain that regulations permit regulated entities to avoid complying with the Act's requirements for minimum cage size by allowing special so called "innovative" cages. 9 C.F.R. §§ 3.6(d), 3.80(c). More specifically, the Plaintiffs contend that the regulations permit regulated entities to use any cage that provides an animal with a sufficient volume of space and the ability to express species typical behavior. 9 C.F.R. §§3.6(d), 3.80(c). However, the Defendants note that such innovations may only be used after approval by the USDA (in the case of animal dealers and exhibitors) or by the Committee at individual research facilities. *Id.* The Defendants defend these provisions, saying that establishing a mechanism for approval of innovative enclosures will likely foster continuing research in engineering and animal behavior. A.R. at 1923 (56 Fed.Reg. 6471 (1991)).

However, the Court can find no support in the regulations for permitting the cage sizes for animals to be decreased, particularly where these reductions can be made by regulated research entities without any oversight by the agency. The Defendants have not provided any authority under the Act for permitting the use of these innovative cage designs. In fact, this provision allows the regulated entities tremendous discretion to use whatever size cage they feel appropriate and would render the Secretary's regulations for minimum cage sizes ineffective, contrary to the Defendants' own finding that greater space is needed for animal cages. *See* Section III.(C) *supra.*

Therefore, the Defendants' provision for special innovative cages is contrary to Congress' desire to provide humane standards for the care and treatment of animals and is arbitrary and capricious.[17]

### E. THE REGULATIONS PROMULGATED BY THE DEFENDANT SECRETARY DO NOT VIOLATE THE FOIA BECAUSE THE DEFENDANTS HAVE ACTED IN A MANNER THAT AVOIDS THE RIGHT OF ACCESS BY THE PUBLIC TO INFORMATION REGARDING THE CONDUCT OF THE REGULATED ENTITIES PERTAINING TO THE TREATMENT OF ANIMALS UNDER THE ACT.

 The Defendants' regulations permit regulated entities to keep their plans

---

**17.** As the Court has held that the final rules promulgated by the agency violated the APA, it does not reach the question of whether the actions of the Office of Management and Budget and the Department of Health and Human Services in regards to these regulations were proper. *See* Plaintiff's Memorandum in Support of its Motion, at 45.

under the Act "on-site" and permit the USDA, but not the public, access to them there. *See* 9 C.F.R. § 3.80. As a result, the public may not have access to this information under the FOIA. The Plaintiffs contend that this method of enforcing the Act violates the Freedom of Information Act ("FOIA").

The Court notes that the FOIA is a disclosure statute that deals with "agency records," which are documents either created or obtained by an agency and under agency control at the time of the request. *See Department of Justice v. Tax Analysts*, 492 U.S. 136, 144–45, 109 S.Ct. 2841, 2847–48, 106 L.Ed.2d 112 (1989). Our Circuit Court of Appeals has held in *Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C.Cir.1992), *petition for cert. filed*, 61 U.S.L.W. 3456 (Dec. 17, 1992) (No. 92–1043), that the FOIA does not obligate agencies to "exercise their regulatory authority in a manner that will maximize the amount of information available to the public." *Id.* at 880. Therefore, in this respect there is nothing this Court can do about this, however much it might be inclined to do so.

Moreover, the Plaintiffs admit that the regulated entities' plan under the Act when stored "on-site" does not constitute an "agency record" under the meaning of the FOIA. *See* Plaintiffs' Memorandum in Support of its Motion for Summary Judgment, at 33. In addition, the Defendants are not withdrawing from public access any documents that were once public.[18] Therefore, these materials are not technically subject to the FOIA and the Defendants' regulations circumvent another Congressional enactment here which, as indicated above, is beyond the control of this Court.

The Court is hopeful that Congress and the new and distinguished Secretary of Agriculture will take another hard look at this issue in light of the legislative history of the Animal Welfare Act and its finding that it is essential to enact regulations to "insure that animals intended for use in research facilities or for exhibition purposes ... are provided humane care and treatment." *See* 7 U.S.C. § 2131.

## IV. CONCLUSION

For all the reasons previously stated, the Plaintiffs' Motion for Summary Judgment shall be granted and the Defendants' Motion for Summary Judgment shall be denied. The Court further holds that the agency's regulations promulgated under the Improved Standards for Laboratory Animals Act ("Act"), 7 U.S.C. § 2143 et seq., are arbitrary and capricious and contrary to law in violation of the Administrative Procedures Act. Therefore, the Court shall remand this case to the agency with the direction that it promulgate new regulations subject to Notice and Comment, without unnecessary delay, in accordance with the law articulated in this Opinion and in compliance with the Court's Order of even date herewith.

## ORDER

Upon consideration of all the papers filed in this case, the applicable law, the oral arguments of counsel, and pursuant to and for the reasons set forth in the Opinion of the Court, issued of even date herewith, it is, by the Court, this 25th day of February, 1993,

ORDERED that, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the

---

**18.** Nothing in the Act prohibits such a result. The Court must assume that Congress knew what it was doing and was aware that documents containing sensitive materials might be created in carrying out the mandate of the Act within research facilities and, therefore, it did not require such information to be filed with the agency. *See* 7 U.S.C. § 2143(b)(4)(B) (Inspection report of the Committee must remain on file at the research facility for three years); *id.* § 2157 (Committee members prohibited from releasing confidential information).

While Congress did not speak explicitly to the confidentiality of documents by regulated entities other than research facilities, the Court finds nothing in the Act or the FOIA that requires the Secretary to make these documents available to the public because they are not "agency records" created by a government entity and under their control. Hopefully, this is not an effort to privatize a governmental function which will stand as an example for other bureaucrats to avoid the daylight of public access and disclosure.

Court shall substitute the Secretary of Agriculture as a Defendant in this action in place of Edward R. Madigan, the former Secretary who has left office; and it is

FURTHER ORDERED the Plaintiffs' Motion for Summary Judgment is granted; and it is

FURTHER ORDERED that the Plaintiffs shall have a Declaratory Judgment that the guidelines issued by the Defendant United States Department of Agriculture are inadequate and not reasonable and are arbitrary and capricious and contrary to law for the reasons set forth in the Opinion of even date herewith; and it is

FURTHER ORDERED that this action is remanded to the Defendant United States Department of Agriculture for promulgation of new regulations subject to Notice and Comment, without unnecessary delay, under the Improved Standards for Laboratory Animals Act, 7 U.S.C. § 2143 et seq.; and in accordance with the Opinion of the Court on this date; and it is

FURTHER ORDERED that the above captioned case shall be, and hereby is, dismissed from the dockets of this Court with the understanding that the Plaintiffs may make further application to this Court in the event that the Defendants do not act with all deliberate speed in accordance with this Court's Order and Opinion of even date herewith.