**Carl BUECKNER**

v.

**Anthony (Tony) HAMEL
and Kathy Collins.**

**No. 01–94–00010–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1994.

Rehearing Overruled Sept. 22, 1994.

Frank C. Fariss, Houston, for appellant.

Don M. Barnett, Houston, for appellees.

Before DUGGAN, HEDGES and ANDELL, JJ.

## OPINION

HEDGES, Justice.

Appellant, Carl Bueckner, challenges an award of $1,450 actual damages and $2,500 punitive damages in favor of appellees, Anthony Hamel and Kathy Collins, for the negligent, careless, or intentional killing of appellees' dogs.[1] We affirm.

### Fact Summary

On November 8, 1989, Bueckner shot two dogs, a dalmatian and an Australian shepherd, belonging to appellees. He was in a deer stand when he observed a group of dogs chasing a doe and her fawn. The dogs were not on property owned by any of the parties. Bueckner was charged with cruelty to animals in connection with this incident. He pled no contest and was ordered to pay appellees $375 in restitution, which he did. Appellees then filed the present civil lawsuit charging Bueckner with negligently, carelessly, or intentionally killing their dogs.

The trial court entered the following conclusions of law and findings of fact, among others:

### Findings of Fact

III. ....

E. The dogs killed by Defendant had a market value.

F. The dogs killed by Defendant had pecuniary value to the Plaintiffs.

G. The dogs killed by Defendant would have produced litters of puppies valuable to the Plaintiffs.

H. The dogs killed by Defendant had intrinsic value to the Plaintiffs and were companions to the Plaintiffs.

I. The dogs killed by Defendant had special value to the Plaintiffs and were loved as pets by the Plaintiffs.

J. Plaintiffs have sustained actual damages in the amount of $1825.00.

K. Defendant is allowed a credit of $375.

### Conclusions of Law

1. Each and all of the acts of the Defendant were intentional and were a proximate cause of the incident made the basis of this suit and the resulting damages to the Plaintiffs.

2. No acts of Plaintiffs were proximate or contributing cause of the incident in question.

3. There was no prior settlement or accord and satisfaction.

4. Plaintiffs are entitled to judgment of and from the Defendant, Carl Bueckner, for the following amounts:

a. $1,450.00 for Plaintiff's actual damages plus prejudgment interest on this amount at the rate of 10% per annum from the date of the filing of this lawsuit, May 15, 1990;

b. $2,500.00 in punitive damages;

c. all costs of court plus postjudgment interest at the rate of 10%.

### Damages

In his first three points of error, Bueckner argues that the trial court's finding of actual damages cannot be based on the value of prospective puppies. He contends that once the value of the unborn puppies is subtracted from the actual damages, the evidence is legally and factually insufficient to support a finding of $1825 actual damages.

■ Texas law recognizes a dog as personal property. *Arrington v. Arrington*, 613 S.W.2d 565, 569 (Tex.Civ.App.—Fort Worth 1981, no writ). As owners of the dogs, appellees are entitled to recover for their wrongful destruction. *City of Garland v. White*, 368 S.W.2d 12, 16 (Tex.Civ.App.—Eastland 1963, writ ref'd n.r.e.).

The contention that actual damages cannot be based on the value of prospective progeny is supported by three arguments: (1) that measure of damages represents speculative consequential damages not allowed by law;

---

1. In its findings of fact, the trial court found that appellees suffered actual damages of $1825 and allowed Bueckner a credit of $375. The award of actual damages was $1450 in the conclusions of law and in the judgment. Any apparent discrepancy is resolved by deducting $375 from $1825.

(2) there is no evidence to support an award for damages for prospective puppies; and (3) there is insufficient evidence to support such an award. We agree in part and disagree in part.

The value of unborn offspring is highly uncertain. Our research indicates that the issue of damages for prospective progeny has not been addressed in many years. In the mature case of *Claunch v. Osborn*, 23 S.W. 937, 938 (Tex.Civ.App.1893, no writ), the court reversed a judgment awarded for injuries sustained when the defendant's stock was turned into the plaintiff's pasture. The plaintiff alleged that the defendant's stock interfered with the breeding habits of his mules, prohibiting them from reproducing. The court held that the "portion of the amended original petition asking for damages for loss of prospective mule colts should have been stricken, ... as the same was speculative, and not recoverable." *Id.* We think that this law, though hoary, is still sound.

■ We hasten to make a distinction between the value of the deceased animal itself and that of its progeny. In *Heiligmann v. Rose*, 81 Tex. 222, 16 S.W. 931 (Tex.1891), the court was asked to define the value of plaintiff's deceased dogs for the purpose of assessing actual damages. The court wrote that

> The special charge asked by [plaintiff], and given by the court, substantially presents the true rule in determining the value of dogs. It may be either a market value, if the dog has any, or some special or pecuniary value to the owner, that may be ascertained by reference to the usefulness and services of the dog.

*Id.* 16 S.W. at 932. It is clear that the measure of damages arises from the animal itself, not from its future progeny. Of course, in some circumstances, breeding potential may be considered in the value of an animal. If a triple crown winning thoroughbred horse were killed the day before it was put out to stud, and there was evidence that the animal was at least potentially fertile, a court might properly consider the pecuniary value of the horse in assessing either its market value (what someone else would pay for it) or its pecuniary value to the owner (reasonably expected stud fees over the life of the animal, discounted to present value). In that instance, the court would look to the animal itself, not to the sales price of its colts, to determine damages.

In this case, we must assess the value of the dogs themselves, not that of their unborn puppies. The record shows the following:

1. The dalmatian was a two-year old female purebred registered with the American Kennel Club.

2. The Australian shepherd was a three-year old female purebred registered with the Australian Shepherd Club.

3. Appellees planned to breed both dogs and had picked out a male for the Australian shepherd.

4. Each female dog could be expected to breed once a year and produce six or eight puppies.

5. The Australian shepherd had already mated with a labrador, and appellees had given the puppies away.

6. The dogs were purchased for the purpose of breeding them with purebred males and selling their puppies. Each had a value based on the puppies she produced.

7. Market value for dalmatian puppies ranges from $125 to $400 each and from $125 to $700 each for Australian shepherd puppies.

We must decide whether this evidence is legally and factually sufficient to support the trial court's finding of $1825 actual damages based on the value of the dalmatian and the Australian shepherd.

### Standard of Review

■ In reviewing no evidence points, this Court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *In re*

*King's Estate,* 244 S.W.2d 660, 661 (Tex. 1951).

In reviewing factual sufficiency points, the Court examines all of the evidence. *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Having considered and weighed all of the evidence, this Court will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex. App.—Houston [1st Dist.] 1988, no writ). We cannot substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Glockzin,* 760 S.W.2d at 666.

Applying the no evidence standard to the record before us, we find that there is probative evidence to support the trial court's award of $1825 actual damages based on the pecuniary value of the dogs to appellees. Further, we do not find that the evidence to support this award is so weak or so against the great weight and preponderance of the evidence as to make it manifestly unjust. Accordingly, we find that the evidence is legally and factually sufficient to support the trial court's finding of actual damages.

We overrule points of error one, two, and three.

### Leash Law

In point of error four, Bueckner contends that under the Texas leash law, he is exempt from liability for the death of the dogs. We disagree. Bueckner relies on TEX.HEALTH & SAFETY CODE ANN. § 822.033 (Vernon 1992), which provides:

(a) A dog that is attacking, is about to attack, or has recently attacked sheep, goats, calves, or other domestic animals or fowls may be killed by any person witnessing or having knowledge of the attack.

(b) A person who kills a dog as provided by this section is not liable for damages to the owner of the dog.

Deer are not specifically enumerated among the protected animals. Therefore, in order for this section to apply, deer must be classified as domestic animals. Domestic animals are defined as animals that are habituated to live in or about the habitations of men, or that contribute to the support of a family. *Powers v. Palacios,* 794 S.W.2d 493, 497 (Tex.App.—Corpus Christi 1990), *rev'd on other grounds,* 813 S.W.2d 489 (Tex.1991) (citing Black's Law Dictionary, 434 (5th ed. 1979)). Clearly, deer are not included within these classifications. The attack on the deer did not justify the shooting under section 822.033.

Additionally, an attack on a protected animal must be in progress, imminent, or recent. TEX.HEALTH & SAFETY CODE ANN. § 822.033(a). The record shows only that the dogs had attacked cattle within the month before the shooting. We do not believe that this type of attack fits within the absolution provided by the statute.

We overrule point of error four.

### Accord and Satisfaction

In point of error five, Bueckner argues that the award of actual damages was barred by accord and satisfaction. He contends that because he paid appellees $375 in restitution in the criminal proceeding, any obligation he owed them has been discharged. We disagree.

An accord requires a bargaining evidenced in a new contract, either express or implied, which replaces an old agreement. *City of Houston v. First City,* 827 S.W.2d 462, 472 (Tex.App.—Houston [1st Dist.] 1992, writ denied). In this new contract, the parties mutually agree that one party may give or perform and the other will accept something that is different from what each was expecting from the old contract. *Id.* The satisfaction is the actual performance of the new agreement. *Id.* A valid accord and satisfaction requires that there initially be a legitimate dispute between the parties about what was expected.

Appellees filed criminal charges against Bueckner for cruelty to animals. The trial court ordered that he pay $375 in restitution

to appellees. Bueckner admits that he never talked with appellees about the incident.

■ These facts do not reflect that an initial agreement existed between the parties. Therefore, appellant's payment of the criminal restitution ordered can hardly be said to be the satisfaction of an accord. Rather, the payment merely represented Bueckner's compliance with a judicial order.

We overrule point of error five.

We affirm the judgment of the trial court.

ANDELL, J., concurring.

ANDELL, Justice, concurring.

I agree that the majority's analysis and disposition of this case is correct. I write separately, however, to address what I consider to be a more substantial basis for affirming this award, namely, the intrinsic or special value of domestic animals as companions and beloved pets. The issue is whether bereaved pet owners must accept the market value of their pets as the measure of actual damages for their pets' wrongful killing, or if they have the option of accepting either the market value or the special value. I consider the general rule of market value to be inadequate for assessing damages for the loss of domestic pets. For the reasons in the following analysis, I would hold that the pet owners have the option of accepting either measure of damages. Hence, I would affirm, but on different grounds.

In this case, Bueckner challenges the sufficiency of the evidence to support the award of $1450 in actual damages to compensate Hamel and Collins for the loss of their beloved pets. The trial court's findings consisted of five separate categories of value: (1) market value; (2) pecuniary value to Hamel and Collins; (3) value to Hamel and Collins of prospective litters of puppies; (4) *intrinsic value* of the dogs to Hamel and Collins and the *value of the dogs as companions* to Ha-

mel and Collins; and (5) special value to Hamel and Collins *as beloved pets.*

Bueckner focuses upon evidence of the market value of Freckles, the one-year-old Dalmatian, and Muffin, the two-year-old Australian Shepherd. Market value is the highest price a willing buyer would pay and a willing seller would accept to do business, both being fully informed, with the property in question being exposed to the market for a reasonable period of time. *Star Houston, Inc. v. Kundak,* 843 S.W.2d 294, 298 (Tex. App.—Houston [14th Dist.] 1992, no writ); BLACK'S LAW DICTIONARY 876 (6th Ed.1990). Bueckner claims that the evidence does not support a finding that Hamel and Collins were damaged in the amount of $1825.[1]

The first three of Bueckner's five points of error exclusively challenge the speculative value of unborn puppies.[2] He has failed to assign points of error challenging the findings of fact that address the intrinsic value of beloved pets. Intrinsic value is not established by market forces, but is personal or sentimental. *Kundak,* 843 S.W.2d at 298. It has also been defined as the true, inherent, or essential value of the thing itself. BLACK'S LAW DICTIONARY 739 (6th Ed.1990). In emphasizing the objectively determinable market value, Bueckner ignores the value of the dogs as companions and as beloved pets. The value of dogs to the human families they share often has nothing to do with whether the dog has a pedigree that is registered with the American Kennel Club.

In this case, Hamel and Collins contend on appeal that their testimony of the special value of Freckles and Muffin serves as an adequate basis for affirming this award of damages. I agree. Hamel and Collins testified that they had no children, and that they played with Freckles and Muffin and enjoyed their company. Freckles was an affectionate "lap dog" and Muffin "pretty well took care of everything. . . ." Both counsel argued at

---

1. As noted by the majority, the $375 discrepancy is a credit based on the amount of restitution Bueckner paid following his conviction of cruelty to animals. The restitution was $325, not $375, and the remaining $50 discrepancy is unexplained.

2. As the majority opinion indicates, the remaining two points of error address Bueckner's claimed "leash law" defense and his claim of accord and satisfaction based on the $325 restitution in the criminal case.

trial about whether this intangible value was an appropriate basis for the damages award:

> [PLAINTIFFS' COUNSEL]: It says "special value and pecuniary." We offered evidence on pecuniary. It didn't come in the way I'd planned. *I'm trying to show the intangible values.* I think the case law I cite—the law I cited has *the value of a pet to its owner.* I'm just trying to elicit some way for the Court to assess the damages.
>
> [DEFENSE COUNSEL]: He just says he can take any price he wants and make it a special value of the dog, but that's no proven value.
>
> [PLAINTIFFS' COUNSEL]: That's what special value is.
>
> THE COURT: Go ahead. I'll value later.

(Emphasis added.)

Bueckner has not assigned a point of error asserting that the *special value* of Freckles and Muffin could not have amounted to $1825 total actual damages. Bueckner only claims that the evidence is insufficient to support a finding of $1825 for the *market value* of Freckles and Muffin along with their speculative offspring.

Bueckner contends that Hamel and Collins must elect from the market value on the one hand, and the intrinsic value as pets on the other hand, but that they are not entitled to recover both. He cites *Young's Bus Lines v. Redmon*, 43 S.W.2d 266 (Tex.Civ.App.— Beaumont 1931, no writ), where the court reversed a $1,500 judgment for the death of a seeing-eye dog belonging to a blind man. In that case, Redmon had pleaded for a market value of $2,500 or, in the alternative, a special value of $2,500. *Id.* at 267. Redmon offered no evidence of the market value of the dog, and the judgment rested upon testimony that was confined to the special or intrinsic value of the dog to its owner. *Id.* The court held that the proper measure of damages was the market value if any, and in the absence of market value, the intrinsic or special value of the dog. *Id.* The court could not base its judgment upon evidence of intrinsic value unless Redmon were to have shown that there was no market value to use as the basis for the award. *Id.*

While I agree that *Redmon* requires this structured election of remedies, I do not agree that an animal's market value, when there is one, necessarily represents the proper measure of damages to compensate pet owners for their loss. A domestic pet with no breeding potential might be worth only $10 in the market to someone else who wants it as a pet. But the animal could be a highly valued companion whose loss would be deeply felt. People who love and care for animals should not be forced to accept as compensation for their loss the amount that the animal would bring in the market.[3]

Bueckner does not contend that Hamel and Collins recovered for both the market value and the intrinsic or special value of Freckles and Muffin. He treats the entire award as though it represents the combined market values of Freckles, Muffin, and their prospective offspring. However, without an explicit correspondence in the findings of fact between the type of value assessed and the dollar amounts awarded, we do not know how the trial court assessed the damages. But we do have a finding that the animals did have a market value. Under *Redmon*, Hamel and Collins cannot recover for both the

---

3. A defendant wanting to minimize his liability might also argue that the market value of non-breeding domestic pets would be the amount that biomedical research laboratories would be willing to pay for the animal as an experimental subject. This would fit the legal definition of "market value" and, hence, would be the "proper measure of damages" required under *Redmon*. The resulting "compensation," however, would be a cruel irony worked upon the bereaved pet owner.

Furthermore, as long as a laboratory somewhere would be willing to pay $10 (or even less) for a similar animal, and some animal owner would be willing to sell for that price, the plaintiffs cannot prove that the pet has zero market value. The fact that a specific plaintiff would refuse to accept a low amount will not suffice to disprove market value. The blind plaintiff in *Redmon* testified that he would not have accepted $5,000 for his trained seeing-eye dog. The court did not treat this as evidence that the dog was worth more than $5,000 in the market. Instead, the court treated this as evidence of special value, and held it inadmissible. 43 S.W.2d at 268. Such an analysis would prevent plaintiffs from ever presenting evidence of special or intrinsic value of pets.

market value and the special value and they must take the market value unless they show that there is none. 43 S.W.2d at 267. Bueckner concludes that the $1825 finding must represent market value alone, and this is what he challenges on appeal.

Bueckner repeatedly insists that Freckles and Muffin had no market value and that their projected future litters of puppies were too speculative to have any market value. If we were to agree with this, then Hamel and Collins would be allowed to recover the intrinsic value of Freckles and Muffin. Hamel and Collins cite *Heiligmann v. Rose*, 81 Tex. 222, 16 S.W. 931 (Tex.1891), for the principle that intrinsic value may be awarded in the absence of market value. The following passage from *Heiligmann* covers the rule:

> Some authorities hold that dogs have no market value. This may be relatively true, but it is not a rule that will govern in all cases. It may be difficult, in the majority of cases, to ascertain the market value of a dog, but such a result may, in some cases, be accomplished. The special charge asked by appellant, and given by the court, substantially presents *the true rule in determining the value of dogs. It may be either a market value, if the dog has any, or some special or pecuniary value to the owner,* that may be ascertained by reference to the usefulness and services of the dog.... There is *no evidence in this case that the dogs had a market value,* but the evidence is ample showing the usefulness and services of the dogs, and that they were of special value to the owner. If the jury from the evidence should be satisfied that the dogs were serviceable and useful to the owner, they could infer their value when the owner, by evidence, fixes some amount upon which they could form a basis. We cannot say that the verdict in this case is not based upon actual damages, and when the evidence, as it does in this case, justifies a verdict for either actual or exemplary damages, or both, we will not

presume that the finding of the jury was based on grounds not proper.

16 S.W. at 932 (emphasis added).

In this passage, the supreme court did not articulate the prioritized scheme for election of remedies ·that the appellate court later used in *Redmon.* That is, the *Heiligmann* court simply stated that the value could be *either* the market value of the dogs or their special value; it did not stipulate that the special value could be chosen only if no market value could be shown. The supreme court's observation that "[t]here is *no evidence in this case that the dogs had a market value,*" does not constitute a requirement that the dog owners prove that the dogs *lacked* a market value. *Heiligmann* is the only supreme court case that *Redmon* cited, and *Redmon* extended it to include this additional hurdle for the plaintiffs.

As noted, Bueckner argues that the market value is zero. He contends in his appellate brief:

> [T]he pets/strays were really *worth little or nothing by any measure* ....
>
> The truth is that these stray adult dogs (totally free and unrestrained at all times ...) were not even worth the prices in the [newspaper] advertisements, introduced by both sides ... since even AKC championship line puppies which grow up running loose, not trained and penned, *become worth only what they can bring as pets: $10.00 or nothing.*
>
> [T]he evidence in the record is wholly lacking and *insufficient to support civil damages in any amount* ....

(Emphasis added.)

If we were to agree with Bueckner that the market value of Freckles and Muffin was zero, this would leave their intrinsic value as the only basis for affirming the award. The record does not contain the trial court's calculations for determining the damages. Yet Bueckner insists that the trial court awarded the $1450 actual damages as market value. While this may have been the case, the record does not reveal this.[4] I would hold that

---

4. Bueckner has incorporated into his brief his own handwritten notes, which allegedly represent the trial court's verbal explanation of the damage calculations, obtained by a long-distance

phone call. He admits that these notations are not a part of the record. Hence, they may not be considered. *Mitchison v. Houston I.S.D.,* 803

the judgment should be affirmed if the finding of $1825 in actual damages is supported by *either* the evidence of the market or pecuniary value of Freckles and Muffin *or* the evidence of the intrinsic or special value of Freckles and Muffin.

The analysis cannot end here, however. The supreme court more recently dealt with the issue of market value and special value in *Porras v. Craig,* 675 S.W.2d 503 (Tex.1984), a case dealing not with domestic pets but with real property. Defendant Porras cleared many large trees off of two acres of land belonging to plaintiff Craig. Craig testified that the value of his land had dropped by $20,000 as a result of this clearing, but he failed to testify about the "market" value. Instead, he testified about what the land meant to him and his wife in personal terms.[5] The jury in *Porras* found that the loss in value had been $7,000, under a jury instruction on "market value" and not on personal value. 665 S.W.2d 167, 168 (Tex.App.—Waco 1983); 675 S.W.2d at 504.

The court of appeals affirmed the judgment on the verdict, and the supreme court reversed, holding that Craig's testimony constituted no evidence of diminution in market value. The supreme court held that where there was no evidence of loss in market value of Craig's land, the court could base the award on the intrinsic value of the trees that were destroyed. 675 S.W.2d at 506. Personal or intrinsic value had not been an option for that jury, however, so the judgment could not stand on the evidence adduced. The supreme court recognized that

Craig had been injured by the destruction of his trees, even though the clearing might actually have *increased* the market value of his land. *Id.* In the interest of justice, the court reversed and remanded for a new trial to determine the intrinsic value of the destroyed trees or to develop the evidence of market value. *Id.*

The present case was tried before the court rather than a jury, and the trial court issued findings of fact. These findings did not specify that the actual damages awarded were for market value rather than for intrinsic value or personal value. The market value finding in *Porras* did not correspond to the testimony of personal or intrinsic value. *Id.* Hence, remand was appropriate. In the present case, remand is unnecessary, because the findings were not limited to market value.[6]

As I have observed above, *Porras* did not involve domestic pets, but real property. Real property, although highly prized, does not have characteristics that can make it a widely recognized member of the family. It is common knowledge among petowners that the death of a beloved dog or cat (or other domestic animal) can be a great loss. This is true even if that loss is the result of a prolonged illness or of an automobile accident rather than an intentional shooting as in the present case.

The majority cites *Arrington v. Arrington,* 613 S.W.2d 565, 569 (Tex.Civ.App.—Fort Worth 1981, no writ), for the proposition that animals are treated as property in the eyes

S.W.2d 769, 771 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

**5.** In his dissent, Justice Wallace (joined by Justice Kilgarlin) contended that the majority had mischaracterized Craig's testimony. He asserted that Craig's testimony addressed both market value—despite failure to include "the magic word 'market' "—and the basis for the exemplary damages. He would have affirmed the judgment on the evidence of market value. *Porras,* 675 S.W.2d at 506–07.

**6.** Yet even in *Porras,* where the supreme court held that the finding of market value could not rest upon evidence that was limited to special or intrinsic value, the supreme court still did not articulate the *Redmon* rule that plaintiffs could

not recover special value without proving the absence of market value. The court discussed the rule as follows:

> Because the record shows evidence that might have allowed Craig to recover under a different theory, in the interest of justice we remand the cause for a new trial. If, on retrial, Craig can show that the market value of his land was reduced, he can recover under that theory; if not, he can attempt to prove damages by the intrinsic value measure.

675 S.W.2d at 506 (citations omitted).

This statement of the rule would have allowed Craig to recover the intrinsic value of his lost trees if he could not show a reduction in the market value of his land. This is not as strict as the *Redmon* rule's requirement that plaintiffs affirmatively show no loss in market value.

of the law. I agree that this is an established principle of law. But animals are not *merely* property. *Arrington* was a divorce case. Among many other items of "property" to be divided, it involved the question of which spouse would be the "managing conservator" of their pet dog, Bonnie Lou. The court decided that issue on the grounds that Bonnie Lou was the property of Mrs. Arrington. But the court spoke in terms that show how our society loves and appreciates dogs as domestic pets, or even as family members:

> *Bonnie Lou is a very fortunate little dog with two humans to shower upon her attentions and genuine love frequently not received by human children from their divorced parents.* All too often children of broken homes are used by their parents to vent spite on each other or they use them as human ropes in a post divorce tug-of-war. In trying to hurt each other they often wreak immeasurable damage on the innocent pawns they profess to love. *Dogs involved in divorce cases are luckier than children in divorce cases—they do not have to be treated as humans.* The office of "managing conservator" was created for the benefit of human children, not canine.

> *A dog, for all its admirable and unique qualities, is not a human being and is not treated in the law as such.* A dog is personal property, ownership of which is recognized under the law. There was testimony that Bonnie Lou was given to Mrs. Arrington over ten years ago.

> Mr. Arrington agreed to Mrs. Arrington's custody of the dog if he could have reasonable visitation. He does not complain of lack of visitation; only that he was not appointed managing conservator. We overrule point of error no. 7 with the *hope that both Arringtons will continue to enjoy the companionship of Bonnie Lou for years to come* within the guidelines set by the trial court. *We are sure there is enough love in that little canine heart to*

*"go around."* Love is not a commodity that can be bought and sold—or decreed. It should be shared and not argued about.

*Id.* (emphasis added; citations omitted).

This language is strikingly different from that used in disposing of inanimate property. This could only have been because animals are so different from other types of property. The Arringtons contended for the companionship of Bonnie Lou. While their conflict was easy to resolve under simple property concepts, simple property concepts cannot reflect the complex reality of the relationships between humans and their pets. Because of the characteristics of animals in general and of domestic pets in particular, I consider them to belong to a unique category of "property" that neither statutory law nor caselaw has yet recognized.

Many people who love and admire dogs as family members do so because of the traits that dogs often embody. These represent some of the best of human traits, including loyalty, trust, courage, playfulness, and love. This cannot be said of inanimate property. At the same time, dogs typically lack the worst human traits, including avarice, apathy, pettiness, and hatred.

Scientific research has provided a wealth of understanding to us that we cannot rightly ignore. We now know that mammals share with us a great many emotive and cognitive characteristics, and that the higher primates are very similar to humans neurologically and genetically.[7] It is not simplistic, ill-informed sentiment that has led our society to observe with compassion the occasionally televised plights of stranded whales and dolphins. It is, on the contrary, a recognition of a kinship that reaches across species boundaries.

The law must be informed by evolving knowledge and attitudes. Otherwise, it risks becoming irrelevant as a means of resolving conflicts. Society has long since moved be-

---

7. Federal statutory law requires animal laboratory facilities to provide "a physical environment adequate to promote the *psychological well-being of primates.*" Improved Standards for Laboratory Animals Act of 1985, 7 U.S.C., § 2143 (1989) (emphasis added), amending the Animal Welfare Act of 1966, 7 U.S.C., § 2131–2154 (1989). Fed-

eral regulations require such facilities to provide for the *"psychological enrichment* of non-human primates...." *Animal Legal Defense Fund v. Secretary of Agriculture,* 813 F.Supp. 882, 889 (D.D.C.1993) (citing 54 Fed.Reg. 10837, 10944 (1989)) (emphasis added).

yond the untenable Cartesian view that animals are unfeeling automatons and, hence, *mere* property. The law should reflect society's recognition that animals are sentient and emotive beings that are capable of providing companionship to the humans with whom they live. In doing so, courts should not hesitate to acknowledge that a great number of people in this country today treat their pets as family members. Indeed, for many people, pets are the *only* family members they have.

Losing a beloved pet is not the same as losing an inanimate object, however cherished it may be. Even an heirloom of great sentimental value, if lost, does not constitute a loss comparable to that of a living being. This distinction applies even though the deceased living being is a nonhuman.

Bueckner contends that under existing Texas case law, if an animal has a market value, then that market value *alone* constitutes the proper measure of damages for the killing of the animal. No Texas Supreme Court case cited by either party, nor any that I have found, has held precisely on this point. I would disagree with *Redmon* and with any other appellate cases that are restrictive on this issue and hold that Hamel and Collins could recover *either* the market value *or* the special or intrinsic value of their beloved pets. Accordingly, I would affirm if the finding of $1825 in actual damages is supported by *either* the evidence of the market or pecuniary value of Freckles and Muffin *or* the evidence of the intrinsic or special value of Freckles and Muffin.[8]

As stated above, I concur in the analysis and disposition of the majority opinion. I hasten to add, however, that testimony that an animal is a beloved companion should generally be considered sufficient to justify a finding of damages well beyond the market value of the animal and its yet-unborn progeny.

---

8. And in this case, we need not determine whether the testimony of special value is sufficient to support the finding of $1825 actual damages,

because Bueckner has not assigned a point of error to that finding.