STAR HOUSTON, INC. d/b/a Star Motor Cars, Appellant,

v.

Charles T. KUNDAK and Marjorie I. Kundak, Appellees.

No. B14–91–01304–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 10, 1992.

Rehearing Denied Jan. 21, 1993.

Josh M. Harrison, The Woodlands, for appellant.

Patrick S. Quigley, Galveston, for appellees.

Before PAUL PRESSLER, MURPHY and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal of a judgment in an action under the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"). A jury found that Star Motor Cars ("Star") had committed knowing violations of the DTPA and awarded the Kundaks actual damages, additional damages, and attorneys' fees. Star appeals. We affirm.

In 1984, the Kundaks bought a new Mercedes from Star. Over the next four years, Star serviced the car some forty-four times. The Kundaks were dissatisfied with the car and Star's maintenance. They filed suit under the DTPA against Mercedes, Inc. and Star on March 17, 1988. The Kundaks had given Mercedes, Inc., proper DTPA pre-filing notice as early as 1987, but did not send Star a notice-letter until March 28, 1988. A second notice-letter was sent to Star on January 19, 1990. The case did not go to trial until May, 1991. There, the Kundaks non-suited Mercedes, Inc., and won a judgment against Star.

In point of error one, Star complains that there was no evidence that the Kundaks had given Star the required thirty-day (now sixty-day) notice before filing suit. Nor, says Star, had the Kundaks specifically pled the statutorily-permitted exception that excuses notice. Star maintains that proof of notice is a necessary element of the Kundaks' DTPA cause of action and that the trial court erred in denying Star's motion for directed verdict and in submitting Kundaks' jury questions.

Under the 1988 version of DTPA § 17.505(a), a plaintiff was required to give a defendant at least thirty-days notice (now sixty-days) of intent to sue along with information on alleged damages and attorneys' fees. TEX.BUS. & COM.CODE ANN. § 17.505(a) (Vernon Supp.1992). However, notice is excused when the advance notice requirement would be impractical because of the impending expiration of a limitations period. TEX.BUS. & COM.CODE ANN. § 17.505(b) (Vernon Supp.1992). The Kundaks pled that "Written notice ... has been given in the manner and form required by the DTPA." Since Star knew it had received notice after suit was filed, the Kundaks' pleading would have been sufficient to alert Star that the Kundaks would be seeking to invoke the exception. At trial, the Kundaks offered the testimony of their attorney that notice was late because of the impending expiration of the limitations period. We find that the Kundaks did plead

and offer proof of the applicability of the exception.

■ If there is any evidence of probative value on any theory of recovery, a directed verdict is improper and the issue is for the jury. *White v. Southwestern Bell Telephone Co.*, 651 S.W.2d 260, 262 (Tex.1983); *Phillips Pipeline Co. v. Richardson*, 680 S.W.2d 43, 46 (Tex.App.—El Paso 1984, no writ). Since there was a pleading and some evidence of probative value of compliance with the DTPA notice requirement via the impracticality exception, the court's denial of Star's motion for directed verdict and submission of the Kundaks' DTPA jury questions was proper.

■ A separate basis for our decision rests on our finding that the purposes of the DTPA notice requirement were achieved here. The purpose of the DTPA is the protection of consumers from deceptive trade practices, and the act is to be liberally construed to achieve this underlying goal. *McKinley v. Drozd*, 685 S.W.2d 7, 11 (Tex.1985). The notice requirement is intended to give the defendant an opportunity to make a settlement offer and minimize litigation expense. *How Ins. Co. v. Patriot Fin. Servs. of Texas*, 786 S.W.2d 533, 538 (Tex.App.—Austin 1990, writ denied).

■ The DTPA statute does not specify the penalty for a violation of the notice provision, and the courts have applied a spectrum of remedial measures including outright dismissal of an action, abatement of a proceeding, or no penalty at all. In effect, the courts have done equity depending on the culpability of the plaintiff and harm to the defendant. While dealing harshly with a plaintiff who refuses to provide any notice, the courts have been less stern with one who commits a mere technical violation of the notice requirement. For example, in *Miller v. Kossey*, 802 S.W.2d 873 (Tex.App.—Amarillo 1991, writ denied), the court dismissed a DTPA action when the plaintiff failed to comply with an agreed order to provide notice to the defendant. In *How Ins. Co. v. Patriot Fin. Servs. of Texas*, the court remanded a DTPA action when the plaintiff failed to

plead or offer proof of notice. *How Ins. Co. supra.* Also, in *Automobile Ins. Co. of Hartford v. Davila*, 805 S.W.2d 897 (Tex.App.—Corpus Christi 1991, writ denied), the court abated an action when the plaintiff failed to plead any notice. On the other hand, in *Star–Tel, Inc. v. Nacogdoches Telecommunications, Inc.*, 755 S.W.2d 146 (Tex.App.—Houston [1st Dist.] 1988, no writ), the court denied the defendant's motion to abate; the plaintiff had given notice the same day he filed suit, but the defendant was not harmed in any way, having had sufficient notice for almost three years prior to trial.

Here, Star was not harmed by the Kundaks' alleged technical violation of the thirty-day notice requirement. Star had an entirely sufficient DTPA notice at the very inception of the suit in March, 1988 and received still another notice in January, 1990. As the trial was not until May, 1991, Star had notice a full three years before trial and had ample time to make a settlement offer, if it had wished to do so. Moreover, the time for Star to have requested the court to intervene to give it time to consider making a settlement offer was at the outset of the suit, not three years later when both parties had incurred extensive litigation costs. We find that the Kundaks' notice was sufficient to achieve the basic objectives of the DTPA notice provision. In any event, we find that Star effectively waived its right to complain of insufficient time to formulate a settlement offer. We overrule Star's first point. Since Star's points two through five turn on the same no evidence complaint, they too are overruled.

■ In point six, Star complains that a written summary of Kundaks' attorneys' fees was improperly admitted into evidence over Star's objections of hearsay and failure to lay a proper predicate. Assuming, without deciding, that the summary was inadmissible, we deem the error harmless. In addition to offering the summary exhibit, Kundaks' attorney testified on the issue of attorneys' fees. The presence of this additional evidence leads us to conclude that the admission of the written summary

was not calculated to cause and probably did not cause the rendition of an improper judgment. Tex.R.App.P. 81(b)(1). Point six is overruled.

■ In point seven, Star argues that the trial court erred in admitting the testimony of Mrs. Kundak regarding damages for the loss of use of the Mercedes. Without this testimony, there was no evidence to support the damage award. Mrs. Kundak testified, "We are asking for 18 months that it was in the shop, times a $500 figure, which was based on the fact that we called to find out what it would cost us to lease." The trial court admitted this testimony over Star's hearsay objection.

We first observe that Kundak's testimony was not technically hearsay. As Ray explains:

> If the witness states that of his own knowledge he heard X make a certain assertion and this is offered to prove the truth of the assertion, the testimony is hearsay. If, on the other hand, the witness states that a certain fact is true but in some manner discloses that his statement is founded on information received from X, the proper objection in strictness is not hearsay but a want of testimonial qualification of personal knowledge on the part of the witness....

1A Roy R. Ray, Law of Evidence § 793 (Texas Practice 1980).

Ray goes on to say that the cases generally treat both types of evidence as hearsay. *Id.* Here, however, the distinction is useful in analyzing Star's challenge to Kundak's testimony.

Kundak did not offer a declarant's out-of-court statement for the truth of the matter asserted. *See* Tex.R.Civ.Evid. 801(d). She was not simply relaying information. Rather, her testimony amounted to an opinion of the market value of the use of her car for one month, including a basis for her personal knowledge, i.e., the research she performed by telephone. That basis could have been challenged by a critical cross-examination of her sources and evaluative skills. It was not.

■ In *Porras v. Craig,* 675 S.W.2d 503 (Tex.1984), the Court held that an owner of

property can testify to its market value as long as the testimony shows that it refers to market value and not intrinsic value. *Id.* at 504–505. Market value is the highest price a willing buyer would pay and a willing seller would accept to do business. *See* Black's Law Dictionary 876 (5th ed. 1979) and Webster's Third New International Dictionary 1383 (1967). On the other hand, intrinsic value is an inherent value not established by market forces; it is a personal or sentimental value. *See* Black's at 739. *Porras* involved a landowner's attempt to recover for damage to his land caused by a neighbor. Although holding that the landowner's opinion testimony was no evidence of damages, the court affirmed the importance of this distinction: "We should not be understood as retreating from the general rule that an owner is qualified to testify about the market value of his property.... Instead, in this case the owner's testimony affirmatively showed that he referred to *personal* rather than market value." *Id.* at 505 (emphasis added).

■ In *Mercedes–Benz v. Dickenson,* 720 S.W.2d 844 (Tex.App.—Fort Worth 1986, no writ), the court followed *Porras* and held that a car owner is competent to testify to the sales market value of his car. The court further stated, "[E]ven though an owner states that the values are only his opinion and fails to give the basis for such opinion, his testimony is admissible as evidence as long as he declares it refers to market value." Here, Kundak's use of the expression "what it would cost us to lease" was a clear reference to market value, not some intrinsic, sentimental, or personal value. That expression also provides some basis for her opinion. We believe that the *Porras* principle should apply to the testimony of a car owner on the market value of the use of his car as well as to the market value of its ownership.

In *Coker v. Burghardt,* 833 S.W.2d 306 (Tex.App.—Dallas 1992, writ denied), the court did not cite *Porras* or *Mercedes* but used a Rule 701 analysis to permit a car owner to testify to the reasonable value of repairs. *Id.* at 309–10; *see* Tex.R.Civ.Evid.

701. *Coker* involved a car owner suing a towing company for damages to his car. The car owner testified to the reasonable cost to repair his car based on visits to various repair shops. The testimony was admitted over the towing company's hearsay and lack-of-expert-qualification objections. The court of appeals ruled that the evidence was admissible.

■ Rule 701 of the Rules of Civil Evidence permits a lay witness opinion if the witness bases his opinion on his perception and if his opinion helps in determining a fact in issue. TEX.R.CIV.EVID. 701. The *Coker* court held that lay witness opinion testimony on the cost to repair a car could be based on hearsay, the key issue being whether the witness *knew* what a reasonable charge was. *Coker*, 833 S.W.2d at 309. A party attacking the witness' qualifications must examine the witness and test the basis of his knowledge. *Id.* As was true of the objecting party in *Coker*, Star did not take Kundak on voir dire to show that there was no rational basis for her opinion. On the record before us, we do not know how many calls Kundak made or whom she called. Nor do we know what capacity Kundak had to evaluate the data she collected. On the other hand, an automobile is so central a feature of modern society that a car owner is generally capable of intelligent filtering and processing of information pertaining to a car's sales and rental values. Star not having cross-examined Kundak on the basis of her opinion, the record before us provides no basis for concluding that the trial court abused its discretion in admitting her testimony. *See Id.* at 310–11.

Under either a *Porras* or Rule 701 analysis, we find that the trial court did not err in admitting Kundak's testimony. We overrule point seven.

■ In point eight, Star objects to the admission of evidence on Kundaks' attorneys' fees because the fees were not segregated as between Star and Mercedes, Inc. However, Star failed to properly object with specificity to the lack of segregation so that the Kundaks could have attempted to clarify the fees allocation at trial. *See*

*Stewart Title Guarantee Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex.1991). Since Star did not preserve error, we overrule point eight.

■ In point nine, Star complains that the amount of attorneys' fees awarded to the Kundaks was excessive. Star maintains that the trial court should have granted Star's motion for new trial or granted its motion for the court to disregard the jury's findings and order a remittitur. In determining the reasonableness of attorneys' fees, we look to the entire record and consider the testimony, amount in controversy, nature of the case, and our common knowledge and experience as lawyers and judges. *Argonaut Ins. Co. v. ABC Steel Products Co.*, 582 S.W.2d 883, 889 (Tex. App.—Texarkana 1979, writ ref'd n.r.e.). Attorneys' fees must be reasonable relative to the amount in controversy, but the determination of reasonableness cannot be made by the application of a mechanical formula. *USX Corp. v. Union Pacific Resources Co.*, 753 S.W.2d 845, 858 (Tex. App.—Fort Worth 1988, no writ). We examine all the evidence in the record to determine whether sufficient evidence supports the damages award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986).

■ The Kundaks pled $100,000 in total damages and put on proof of $22,800 in current attorneys' fees and $14,000 in conditional fees for post-trial and appeal services. The jury awarded the Kundaks $1,500 actual damages, $7,500 additional damages, $15,000 pre-trial and trial attorneys' fees, and an additional $6,000 for post-trial and appeal services. The Kundaks' attorney testified that the going rate for attorneys' fees was in the range from $100 to $300 per hour. He stated that he charged the Kundaks $100 per hour on a total of 228 hours which included both his time and the time of a participating attorney. He said that the time included some trial time as well as pre-trial services such as examining files, meetings with the Kundaks, review of documents, interrogatories,

requests for production, attending depositions, pre-trial orders, and legal research. He also testified that an additional $14,000 would be required to cover post-trial services and appeals. In a three-day trial, the Kundaks called five witnesses, Star two, and Mercedes one. In view of the record and our experience, we find that there was some evidence supporting the amount of attorneys' fees awarded the Kundaks and that the evidence was not so insufficient that the jury's verdict was manifestly unjust. We overrule point nine.

■ In its last point, Star argues that there was no evidence of "knowing conduct" and that the additional damage award should be reduced. In our review of a no evidence point, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

> "Knowingly" means actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim ... but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

TEX.BUS. & COM.CODE ANN. § 17.45(9) (Vernon 1987).

■ The record contains testimony by a Mercedes representative that warranty repair work offered Star the potential for profit-taking in that Mercedes reimbursed its service centers a fixed amount for a given warranty repair regardless of the amount of work actually performed. The record also reflects that the bulk of the repair work involved three vehicle subsystems that were repeatedly serviced without correcting the basic faults. There was testimony that Star's resort to readily available reference materials and technical advice from Mercedes would have led to quick resolution of the problems. We find that there was some evidence of knowing con-

duct by Star and dismiss Star's last point of error.

There being no reversible error, we affirm the judgment below.