**Evenor RIVAS and Continental Casualty Insurance Co., Appellants,**

v.

**CITY OF HOUSTON and Joel Calfee, Appellees.**

No. 14–98–00431–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 8, 2000.

Bill Robins, Robert Perry McConnell, Houston, for appellant.

Richard John Urra, Andrea Chan, Houston, for appellee.

Before Justices YATES, FOWLER, and DRAUGHN.[1]

## SUPPLEMENTAL OPINION ON SECOND MOTION FOR REHEARING

LESLIE BROCK YATES, Justice.

Appellants' second motion for rehearing is overruled. This supplemental opinion is issued to address errors of law and fact found in the dissenting opinion to the court's decision to overrule that motion.

The relevant facts and background information are set out in the panel opinion issued in the above-referenced case on March 2, 2000, and will not be repeated here. It is significant for these purposes to note that the issues in this case concern whether Joel Calfee, a paramedic for the City of Houston Fire Department, was entitled to official immunity for the good faith performance of a discretionary duty when the ambulance Calfee was driving collided with a truck driven by the appellant, Evenor Rivas.

■ The dissent contends that Calfee was not entitled to official immunity, as a matter of law, because he had no "discretion to run a red light without first slowing down for safe operation." The dissent mistakenly concludes that, because running a red light violates state law and Houston Fire Department regulations, Calfee was not performing a discretionary function while transporting a patient to the hospital at the time of the accident. However, well-settled law dictates that, in deciding whether Calfee's conduct was discretionary, we must focus on whether he was "performing a discretionary function, *not* on whether [he] had discretion to do an allegedly wrongful act while discharging that function." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994) (emphasis added); *see also Rivas v. City of Houston*, 17 S.W.3d 23, 29 (Tex.App.—Houston [14th Dist.] 2000) (quoting *Harris County v. Ochoa*, 881 S.W.2d 884, 887 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (citing *Chambers*, 883 S.W.2d at 653)). Under this analysis, the critical inquiry is whether Calfee, as a paramedic driving an ambulance, was "performing a discretionary function." *See Chambers*, 883 S.W.2d at 653. The dissent ignores this well established standard and concentrates instead on what the Texas Supreme Court has told us not to focus on—namely, on whether Calfee "had discretion to do an allegedly wrongful act while discharging that function," *i.e.*, to run the red light. *See id.* Because the dissent's rationale has been expressly rejected by the Texas Supreme Court, the dissent misses the mark in its discussion of whether Calfee was performing a discretionary duty at the time the accident occurred.

■ With regard to the dissent's treatment of whether Calfee was performing a discretionary duty in good faith, the dissent also mischaracterizes the facts of the case, concluding that there was "no evidence that the patient was in immediate danger to either himself or to the paramedics." In reality, the record contains testimony from both Calfee and his partner, who was responsible for upgrading the transport from a Code I "nonemergency" to a more critical Code II conveyance, that the patient was becoming increasingly belligerent and would not remain in his restraints. The patient would not stay on the stretcher and, at one point, he rolled onto the floor of the ambulance, where Calfee's partner had to "struggle" to secure him. The paramedics had to stop the ambulance more than once to secure the patient for his safety. The patient became progressively "combative," causing the paramedics concern for their own safety. At that point, the decision was made to upgrade the transport to a more serious Code II, in view of the patient's condition.

1. Senior Justice Joe L. Draughn, sitting by assignment.

This decision was made because the paramedics feared for the patient's safety as well as their own. Both paramedics testified that the need to get the patient to the hospital quickly outweighed the risks of upgrading the transport to a Code II emergency.

In concluding that Calfee failed to act in good faith, the dissent glosses over these facts and also downplays the seriousness of the patient's condition in a misleading way by finding that "[t]he patient's only injury was a bloody nose." The dissent's assessment ignores evidence that the patient had fallen on a stick which had become "lodged" up his nose. The dissent also overlooks the fact that the ambulance picked up the patient at around 4:00 a.m., at a "vacant storefront" on the edge of downtown Houston, where there were "several gentlemen who were sitting out front drinking." There was also evidence that the patient had been using illegal drugs. Calfee testified that injured patients, particularly those under the influence of drugs, are unpredictable and potentially dangerous both to themselves and to paramedics trying to treat them. Calfee related that, on a prior occasion, a patient who had been using cocaine suddenly and unexpectedly punched Calfee in the face during a trip to the hospital. Both paramedics in this case testified that the patient's increasing anxiety and irritability were factors in the decision to upgrade his conveyance to a Code II.

The Texas Supreme Court has noted, more than once, that "the good faith standard is not equivalent to a general negligence test, which addresses what a reasonable person *would have done*, rather than what a reasonable official *could have believed*." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n. 1 (Tex.1997) (citing *Chambers*, 883 S.W.2d at 661, n. 5) (emphasis in original). Here, the evidence establishes that Calfee reasonably believed there was a great need to get the patient to the hospital as quickly as possible for safety reasons. Therefore, the evidence shows that Calfee acted in good faith as a matter of law. The dissent, by skewing the facts, focuses only on the issue of whether Calfee was negligent and ignores not only pertinent facts but also the proper legal standard. *See Wadewitz*, 951 S.W.2d at 467 n. 1 (explaining that "[e]vidence of negligence alone will not controvert competent evidence of good faith"). Accordingly, the dissent errs in its legal as well as its factual analysis.

Appellants' second motion for rehearing is overruled.

DON WITTIG, Justice, dissenting on second motion for rehearing.

The majority opinion has effectively ruled that an ambulance driver, who is tired and wants to get a belligerent, uncooperative patient to the hospital as quickly as possible, can violate traffic and safety laws, disregard governmental rules and regulations, run a red light, slam into another vehicle, and be immune from liability as a matter of law. I disagree, particularly in light of controlling case law and evidence to the contrary.

Official immunity as an affirmative defense to personal liability arises only in context of the good faith performance of a discretionary duty. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 465–66 (Tex. 1997). Thus, two factors are involved in reviewing the propriety of Calfee's qualified immunity: "discretionary duty" and "good faith." In reaching its verdict at trial, the jury found that Calfee, as the driver of the ambulance, did not act in good faith—that is, it found that a reasonably prudent driver, under the same or similar circumstances, could *not* have believed that the need to immediately take the patient to the hospital outweighed a clear risk of harm to the public in proceeding through the red light without first slowing down. This finding was set aside by the trial court's judgment n.o.v., which granted qualified immunity as a matter of law. In affirming the judgment n.o.v., the majority opinion found that Calfee exer-

cised a discretionary duty in good faith as a matter of law, both as to calling an emergency code and in failing to slow down before proceeding through the red light.

The trial court's ruling did not identify any particular act by Calfee as having been discretionary. While appellee City of Houston's motion for judgment n.o.v. argued that the discretionary act was the decision to call an emergency run, its motion did not address the issue that was actually submitted to the jury, which was whether Calfee acted in good faith in proceeding through the red light without first slowing down. Appellants' second motion for rehearing argues that this failure to slow down at the red light was not an exercise of discretionary duty. The distinction between these two acts—the decision to code an emergency run and the failure to slow down at the red light—is crucial and was not clearly addressed in the majority opinion.

The record is void of any evidence that Calfee, as an ambulance driver during an emergency run, had the discretion to run a red light without first slowing down for safe operation. In fact, the evidence established the opposite. Calfee himself acknowledged that he was required to follow Houston Fire Department rules and regu-

lations at all times, which mandated that he use the ambulance lights and sirens during an emergency run, and slow down before proceeding through an intersection, red light or stop sign. Additionally, state law mandates that an emergency vehicle may proceed past a red signal, but only "after slowing as necessary for safe operation." TEX. TRANS. CODE ANN. § 46.001(2).

The majority's opinion side-steps the significance of this fact by stating that because Calfee was transporting a patient during an emergency run, he was performing a discretionary function as a matter of law at the time the accident occurred, citing *City of El Paso v. Higginbotham*, 993 S.W.2d 819, 823 (Tex.App.-El Paso 1999, no pet.) and *Carrola v. Guillen*, 935 S.W.2d 949, 952 (Tex.App.—San Antonio 1996, no writ). Neither one of these cases provides support for the majority's position that an ambulance driver, as a matter of law, has the discretion to proceed through a red light without first slowing down during an emergency run. In absence of either facts or law to support such a holding, the granting and affirming of qualified immunity to Calfee as a matter of law was improper.

Regardless, even if we were to assume a discretionary act was at issue,[1] the majori-

---

1. In its supplemental opinion, the majority now expands its opinion on discretionary function. First, *Wadewitz* applies to *"discretionary duties* within the scope of the empoyee's authority, *provided the employee acts in good faith"* (emphasis added). *Wadewitz* assumes a discretionary duty. Secondly, both the original and supplemental opinions misconstrue discretionary function. The discretionary function exception to the waiver of governmental immunity is designed to avoid judicial review of governmental policy decisions. *See State v. Terrell*, 588 S.W.2d 784, 787 (Tex.1979); *Bridges v. Robinson*, No. 95–61271–CV, 2000 WL 330026 *7 (Tex.App.-Houston [14th Dist.] March 30, 2000, no pet. h.). The distinction is typically stated in terms of actions taken at planning or policy-making level-immune, versus actions taken at the subordinate or operation level-not immune. *See Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 433 (Tex.App.—Fort Worth 1989,

writ denied). Here, evidence shows Calfee, serving as a vehicle operator, decided to code the situation in conjunction with paramedic Ostwald. At the end of their shift they wanted to get home. The majority continues to exclude from its consideration evidence and reasonable inferences or how the jury viewed the need/risk evidence such as the two or three stops by the ambulance. These full stops, on the side of the road, were to handle the same injured party, whom initially was not even restrained. Yet, the majority makes our streets even more dangerous by clothing an ambulance driver with immunity for running red lights without sirens, lights or slowing. (Contrast *Wadewitz* where lights and siren were used and there still was a *fact issue*.) Therefore, assuming a discretionary duty, the driver is still accountable in law according to the need/risk test. The ambulance can stop two or more times to attend the injured, but does not have to slow for red

ty's opinion is in direct conflict with *Wadewitz* in holding that Calfee acted in "good faith" as a matter of law. *Wadewitz* holds that "good faith" encompasses a balance between two separate aspects: a "need" aspect which considers the urgency or seriousness of the situation to which the official is responding and the availability of alternative courses of action, and a "risk" aspect which considers the nature and severity of the harm the official's actions could cause, the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent official. *Id.* at 467.

As Calfee was unable to recall the collision at trial or testify as to events immediately prior to his entering the intersection, there was no evidence as to the subjective facts he relied upon in proceeding through the red light, and no evidence that the need to proceed through the red light without slowing down outweighed the risk such act might create. In absence of such evidence, *Wadewitz* does not allow "good faith" to be found as a matter of law, and the majority opinion erred in holding to the contrary.

In considering only the evidence and reasonable inferences supporting the jury's findings in the light most favorable to the verdict, and after disregarding all evidence and inferences to the contrary, there is more than a scintilla of evidence to support the jury's finding of lack of good faith. Ostwald, the paramedic tending to the patient in the back of the ambulance, testified that in deciding whether to code an emergency run, he relied on the fact that Calfee was required by HFD regulations to slow down at intersections and red lights. Calfee, the driver, testified that he did not know if the siren was on, and that he had no memory of running the red light and colliding with appellant Rivas' vehicle. Ostwald further testified that it was 4:00 a.m., they were tired, the patient was uncooperative and hostile and kept removing

his restraints, and that they wanted to get the patient to the hospital and "get it over with." There was no evidence that the patient was in immediate danger to either himself or to the paramedics. The patient's only injury was a bloody nose. The majority opinion, however, specifically states that while this evidence that the patient was not in immediate danger was pertinent to the "need" factor, it was insufficient to support the jury's finding against good faith. By ignoring evidence which supported the lack of a need to get the patient to the hospital as quickly as possible, the majority opinion violates both *Wadewitz* and the standard of review we are required to follow here. This would hold true regardless of whether we are considering the decision to code to an emergency run, or the running of the red light without first slowing down.

The majority opinion has erred in upholding the judgment n.o.v., as Calfee's failure to slow down before proceeding through the red light was not shown to be either factually or legally an exercise of discretionary duty. The majority has further erred in holding that there was no evidence to support the jury's finding against good faith, and erred in holding that good faith was shown as a matter of law. Both good faith and "safe operation" type of inquiries will all but invariably be fact specific, and questions to be determined by the jury. *Cf. City of Lancaster v. Chambers*, 883 S.W.2d 650, 657 (Tex. 1994). Both this court's and the trial court's action in seizing and usurping the jury's sole authority to determine the disputed facts, borders on the unconstitutional deprivation of the right to trial by jury. *See* TEX. CONST. Art. I, § 15; *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–34 (Tex. 1986). A court of appeals may unfind facts, but cannot find them. *See id.* at 634. Today, this court substitutes its view for that of the jury.[2]

lights or the safety of other law abiding citizens.

2. Judging by the supplemental opinion, the majority still argues inferences from disputed

I would grant appellants' second motion for rehearing, withdraw the majority decision, reverse the judgment n.o.v, and enter judgment in accordance with the jury's verdict.

facts. The opinion continues to fail to appreciate the *jury found against the City and Calfee*. Likewise the majority is insistent of its version of the facts and disregards the plaintiff's evidence and inferences; they still refuse to discuss all the contrary evidence and that Calfee just wanted to "get it over with." Thus the majority fails to follow long standing case law both from the Texas Supreme Court and our court. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992) (if issue properly pleaded and supported by some evidence, litigant is entitled to have questions submitted to the jury); *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989) (court of appeals not authorized simply to substitute its assessment of the evidence in this case for that of the district court); *Qantel Business Sys. v. Custom Controls*, 761 S.W.2d 302, 303 (Tex.1988) (directed verdict improper if there is any evidence of probative value raising a material fact issue); *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.

1986) (where more than scintilla of evidence supported jury finding, JNOV was improper);*White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983)(if any evidence of probative value on any theory of recovery, directed verdict improper and is issue for the jury); *Star Houston, Inc. v. Kundak*, 843 S.W.2d 294, 297 (Tex.App.-Houston [14 th Dist.] 1992, no writ)(same); *Russell v. Ramirez*, 949 S.W.2d 480, (Tex.App.-Houston [14 th Dist.] 1997, no pet.) (to uphold JNOV, appellate court must determine that no evidence supports jury's findings); *Edgington v. Maddison*, 870 S.W.2d 187, 189 (Tex.App.-Houston [14 th Dist.] 1994, no writ) (if any evidence of probative force supporting the issue, motion for JNOV must be overruled); *Nationwide Mut. Ins. Co. v. Crowe*, 857 S.W.2d 644, 649 (Tex.App.-Houston [14 th Dist.] 1993, writ dism'd by agr.) (directed verdict improper if there is any evidence of probative value which raises material fact issue).