**Opinion issued April 6, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-20-00327-CV

_____

## CITY OF HOUSTON, Appellant

## V.

## FRANK NICOLAI AND DEBORA NICOLAI, AS PARENTS OF CAROLINE NICOLAI, DECEASED, Appellees

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-75121**

## OPINION ON EN BANC RECONSIDERATION

Frank Nicolai and Debora Nicolai, as parents of Caroline Nicolai, deceased, have moved for en banc reconsideration of our March 31, 2022, opinion and judgment. *See* TEX. R. APP. P. 49.5. A majority of the Court voted to grant en banc

reconsideration. We withdraw our opinion of March 31, 2022, vacate our judgment of the same date, and issue this en banc opinion and judgment in their stead.

This is the City of Houston's second interlocutory appeal in the Nicolais' suit alleging that the City is vicariously liable for its police officer's negligence in operating a patrol car that proximately caused the death of their daughter. The trial court denied the City's motion for summary judgment, which asserted the trial court lacks jurisdiction because there is no waiver of governmental immunity under the Texas Tort Claims Act.[1] On appeal, the City contends the TTCA waives governmental immunity in suits arising from the negligent operation of a motor vehicle by a government employee acting within the scope of her employment only if she would be personally liable under Texas law. And here, according to the City, the police officer is shielded from personal liability by official immunity. Because we conclude the City did not establish the police officer's official immunity as a matter of law, we affirm.

## Background

Houston Police Department Officer R. Gonzales, while on patrol, responded to a call involving a suspected intoxicated driver. When she arrived, Officer Gonzales found Caroline Nicolai sitting on a curb next to her car. Caroline appeared to be intoxicated and could not stand without falling. Officer Gonzales did not arrest

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.009; *see also id.* § 51.014(a)(5).

2

Caroline. Instead, for Caroline's safety, Officer Gonzales placed Caroline in handcuffs and into the back seat of the patrol car. She decided to take Caroline to the sobering center in downtown Houston, instead of to jail.

While driving Caroline to the sobering center, around 3:30 a.m., Officer Gonzales's patrol car was struck by another car driven by N. Moser, who was intoxicated. Officer Gonzales had never been to the sobering center before and had to stop several times to check the map on her mobile data terminal. Officer Gonzales was driving "very slowly" to look for the sobering center when the accident happened. As Officer Gonzales entered the intersection of Chartres Street and Texas Avenue, where she had the green light, the car driven by Moser, who failed to stop at the red light, "violently" struck the patrol car's left side. Caroline was ejected from the patrol car and sustained fatal injuries. According to an HPD investigation, Caroline was not seat belted in the back of the patrol car.

The Nicolais, Caroline's parents, filed a negligence and wrongful death suit alleging that the City was vicariously liable for Officer Gonzales's negligence in:

- failing to use, misusing, or improperly using the patrol car's seat belt;
- failing to keep a proper lookout;
- failing to slow down or speed up to avoid the collision;
- failing to properly brake;

- failing to take appropriate evasive action to avoid the collision or lessen impact;

- handcuffing Caroline in the back seat when Caroline "did not appear to be under arrest or need to be handcuffed";

- failing to provide proper police protection; and

- failing to follow HPD policies and procedures for seat belt use.

The Nicolais pleaded that the TTCA waived the City's governmental immunity because Caroline's death was caused by Officer Gonzales's operation or use of a police vehicle or use of tangible personal property: handcuffs and a seatbelt. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)–(2).

The City answered and filed a plea to the jurisdiction. The City intitally argued, among other things, that the TTCA did not waive its governmental immunity because (1) the Nicolais' claims did not arise from Officer Gonzales's operation or use of a motor vehicle but instead derived from Moser's tortious conduct; (2) the use or non-use of a seat belt is not part of the operation or use of a motor vehicle; and (3) Officer Gonzales's failure to seat-belt Caroline constituted "non-use" of personal property. The trial court denied the plea to the jurisdiction, and this Court affirmed. *See City of Hous. v. Nicolai*, 539 S.W.3d 378, 381 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Relevant here, the Court determined:

- "Officer Gonzales was actively operating, i.e., driving, her patrol car at the time of the collision and using it to transport [Caroline] to the Sobering Center, and not just as a place to hold her";

4

- "[T]he evidence of Officer Gonzales's 'omission' or 'negligence' in transporting [Caroline] in the back of the patrol car without a seat belt, in violation of HPD policy and state law, 'relate[d] to the operation of the vehicle itself,' and not to 'some other aspect of [her] conduct'"; and

- The Nicolais had raised a fact issue on waiver of the City's immunity for claims arising from an employee's operation of a motor vehicle.[2]

*Id.* at 389–90, 391–92.

On remand, the City challenged the trial court's jurisdiction a second time on a new ground. In a traditional motion for summary judgment, the City argued that it retained governmental immunity under the TTCA because Officer Gonzales would not be personally liable for her allegedly negligent operation or use of the patrol car. According to the City, Officer Gonzales was entitled to official immunity because she was performing a discretionary duty when the collision occurred—transporting Caroline, an intoxicated person, to the sobering center. The City's summary-judgment evidence included, among other things, deposition testimony from the Nicolais' police-practices expert about officers' discretion under HPD's policies to effect arrests, handle intoxicated people, and transport people.

The Nicolais responded that Officer Gonzales was not performing a discretionary duty but instead was engaged in a ministerial act because (1) HPD policy and Texas law required her to secure Caroline, a handcuffed passenger, with

---

[2] In reaching this holding, the Court rejected the City's contention that seat belts constitute "tangible property" that are not a part of the "operation or use of a motor-driven vehicle." *City of Hous. v. Nicolai*, 539 S.W.3d 378, 391–92 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

5

the patrol car's seat belt, and (2) she was driving under ordinary, nonemergency circumstances when the collision occurred. The Nicolais' summary-judgment evidence included, among other things, certain HPD General Orders, affidavit or deposition testimony from their police-practices and accident-reconstruction experts,[3] and deposition testimony from Officer Gonzales and other HPD officers, including officers who reconstructed the crash.

The trial court denied the City's summary-judgment motion, and the City appeals that order.

## Discussion

The City argues that the trial court erred by denying its summary-judgment motion because the evidence established Officer Gonzales's official immunity, and thus the City retains its governmental immunity as a matter of law.

## I. Standard of Review

A plaintiff has the burden to show the trial court's subject-matter jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). That burden includes an obligation to show a waiver of sovereign immunity or its counterpart,

---

[3] We note the City objected to some of the Nicolais' summary-judgment evidence, including the affidavit of the Nicolais' police-practices expert. To the extent the City complains on appeal that the trial court refused to rule on its objections or that the expert's affidavit should not be considered, we do not reach that complaint. It is unnecessary to do so given our ultimate holding that the City did not establish its entitlement to judgment as a matter of law. *See* TEX. R. APP. P. 47.1.

governmental immunity, in suits against the State and its political subdivisions, including cities. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323–24 (Tex. 2016) (explaining that governmental immunity extends to political subdivisions of State, such as counties, cities, and school districts). A governmental unit may raise an immunity defense in a summary-judgment motion challenging the trial court's jurisdiction. *See Town of Shady Shores*, 590 S.W.3d at 551; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

We review the trial court's decision on a summary-judgment motion de novo. *See Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017). To obtain a traditional summary judgment, the movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for a traditional summary judgment on an affirmative defense must conclusively establish each element of the defense. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes its right to summary judgment as a matter of law, the burden

7

shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

## II.  Governmental Immunity

In its sole issue, the City argues that the trial court erred by denying its summary-judgment motion because the evidence established Officer Gonzales's official immunity, and thus the City retains its governmental immunity.

The City, as a municipality and political subdivision of the State, cannot be vicariously liable for the actions of its employees unless its governmental immunity has been waived. *See, e.g.*, *City of Hous. v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *Gomez v. City of Hous.*, 587 S.W.3d 891, 896 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The TTCA waives governmental immunity in limited circumstances. *See Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Section 101.021(1) of the TTCA provides:

> A governmental unit in the state is liable for property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law . . . .

Tex. Civ. Prac. & Rem. Code § 101.021(1).

Because the Act provides that a governmental unit may only be liable when "the [negligent] employee would be personally liable to the claimant," whether the employee is entitled to official immunity also affects whether the Act's limited waiver of governmental immunity applies. *See id.*; *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995); *see also* TEX. CIV. PRAC. & REM. CODE § 101.025 (immunity to suit waived to extent of liability created by TTCA). "If the employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its [governmental] immunity under [Section 101.021(1)]." *DeWitt*, 904 S.W.2d at 653. "A governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *Ramos v. Tex. Dep't of Pub. Safety*, 35 S.W.3d 723, 726 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Because official immunity is an affirmative defense, the City must prove each element of the defense. *Clark*, 38 S.W.3d at 580.

This Court previously determined that Officer Gonzales's "'omission' or 'negligence' in transporting [Caroline] in the back of the patrol car without a seat belt" is relevant to the TTCA's waiver of immunity for operation of a motor vehicle, *see Nicolai*, 539 S.W.3d at 390–92, and there is no dispute that Officer Gonzales was acting in the scope of her authority when the collision occurred. The controlling

9

question is whether Officer Gonzales's alleged injury-producing conduct was discretionary or ministerial.

If a governmental employee, such as a law enforcement officer, is performing a discretionary act within the scope of her public duties and in good faith, she is protected by official immunity, no matter if she was negligent in the exercise of those duties. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *City of Dall. v. Brooks*, 349 S.W.3d 219, 225 (Tex. App.—Dallas 2011, no pet.). An action is discretionary if it involves personal deliberation, decision, and judgment. *Ramos*, 35 S.W.3d at 727 (citing *Chambers*, 883 S.W.2d at 654). But an action that requires obedience to orders or the performance of a duty for which the employee has no choice is ministerial. *Id.* The distinction between discretionary and ministerial acts can be narrow because any official act that is ministerial will still require the employee's discretion to execute it. *Id.* In determining whether an act is discretionary, the focus is on whether an employee was performing a discretionary function—not whether the employee had the discretion to do an allegedly wrongful act while discharging that function, or whether the job description at issue includes discretionary duties. *Id.*

Sometimes, an officer's operation of a motor vehicle "involves personal deliberation or the exercise of professional expertise, decision, or judgment." *Brooks*, 349 S.W.3d at 225. Examples of an officer's discretionary activities include

10

high-speed chases, investigations, traffic stops, and the decision to violate traffic laws to quickly reach the scene of suspected criminal activity or assist another officer there. *See, e.g.*, *Chambers*, 883 S.W.2d at 655 (engaging in high-speed chase was discretionary act); *Webb County v. Lino*, No. 04-19-00891-CV, 2020 WL 4218714, at *5 (Tex. App.—San Antonio July 22, 2020, no pet.) (mem. op.) (initiating routine traffic stop was discretionary act); *Brooks*, 349 S.W.3d at 226–27 (responding at high rate of speed to call for back-up involving combative and suicidal person was discretionary act); *Collins v. City of Hous.*, No. 14-13-00533-CV, 2014 WL 3051231, at *5 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op.) (responding quickly to call for assistance to apprehend reckless motorist was discretionary act); *City of Hous. v. Hatton*, No. 01-11-01068-CV, 2012 WL 3528003, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, pet. denied) (responding to "Priority One" call for assistance and using emergency lights and sirens was discretionary act when accident occurred); *Harless v. Niles*, 100 S.W.3d 390, 397–98 (Tex. App.—San Antonio 2002, no pet.) (officer's decision to violate traffic laws to quickly reach scene of suspected criminal activity and assist another officer was discretionary act).

In emergency or other evolving situations, officers retain official immunity because of their performance of discretionary acts, so long as the other immunity

elements are met. *Hulick v. City of Hous.*, No. 14-20-00424-CV, 2022 WL 288096, at \*3 (Tex. App.—Houston [14th Dist.] Feb. 1, 2022, pet. denied) (mem. op.).

But absent these special circumstances, "[s]imple, nonemergency driving by a police officer while on official business is a ministerial act that does not entitle the officer to official immunity." *Hatton*, 2012 WL 3528003, at \*3. This is because ordinary driving, unlike the pursuit and apprehension of suspects or an urgent backup-call response, does not require an officer to perform law enforcement functions involving discretion and judgment that affect how she uses her police vehicle. *See City of Austin v. Albarran*, No. 03-10-00328-CV, 2011 WL 2533751, at \*4–6 (Tex. App.—Austin June 23, 2011, no pet.) (mem. op.) (officer's decision to respond to emergency call without full emergency protocols, opting instead to use protocols that required officer to obey traffic laws, created fact issue on whether officer was performing discretionary or ministerial act).

A line of authority from our sister appeals court helps illustrate the difference. *See Hulick*, 2022 WL 288096, at \*4; *City of Hous. v. Jenkins*, 363 S.W.3d 808, 817 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 880 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Woods v. Moody*, 933 S.W.2d 306, 308 (Tex. App.—Houston [14th Dist.] 1996, no writ). In *Woods*, the court held that an officer who struck another driver's car from behind while on duty and en route to "Harris County business" was not entitled to official immunity

12

because he was engaged in the ministerial act of operating his police car. *Id.* This was so despite the officer's statement that the accident happened when his foot slipped off the brake as he was picking up a clipboard from the car's floorboard to avoid the clipboard becoming dangerously lodged under the brake pedal. *Woods*, 933 S.W.2d at 307–08. Even if the act of picking up the clipboard was discretionary, the court explained:

> Unlike high[-]speed chases or traffic stops, operating a car in a non-emergency situation does not involve personal deliberation or the exercise of professional expertise, decision, or judgment. To the contrary, driving a car is ministerial because it requires a person to "perform[] in a given state of facts and in a prescribed manner in obedience to the method of legal authority, without regard to . . . *the propriety* of the act being done." Thus, absent special circumstances that suggest the officer was performing a discretionary function, such as engaging in a high[-]speed chase, we hold that an officer driving a motor vehicle while on official, non-emergency business is performing a ministerial act.

*Id.* at 308 (internal citations omitted).

In *Gibbons*, an officer rear-ended the plaintiff while at a stop light as he was checking his on-board computer terminal to determine whether a nearby vehicle had been stolen. *Gibbons*, 150 S.W.3d at 880. When the officer looked down to see the results of his query, his police vehicle moved forward, hitting the plaintiff's car from behind. *Id.* The court determined that the officer was performing the ministerial act of driving a police vehicle when he struck the plaintiff's car because his "negligent operation of his vehicle was separate and apart from his action of checking the

13

license plate." *Id.* at 886. And because the officer was operating his vehicle in a nonemergency situation, "he was obligated to operate his patrol car in a safe manner in accordance with traffic laws and was performing a ministerial function." *Id.*

In *Hulick*, an officer responded to a service call involving a suspect causing a disturbance outside of a business. *Hulick*, 2022 WL 288096, at *1. While driving in his police vehicle to search for the suspect, the officer failed to yield to oncoming traffic in making a left turn and struck a motorcyclist. *Id.* The court held the officer was not entitled to official immunity because he was engaged in the ministerial duty of driving. *Id.* at *4. The court reasoned: "Although [the officer] may have been investigating a disturbance when the accident occurred, that fact does not necessarily mean that even the ministerial operation of his vehicle during the investigative process is protected by immunity." *Id.* In arguing that the officer's performance of an investigative function made his use of the police vehicle a discretionary act, the City "fail[ed] to focus on the nature of [the officer's] conduct that allegedly caused [the motorcyclist's] injury—his failure to yield the right-of-way to oncoming traffic[.]" *Id.* The court noted there were no "governmental or investigative concerns that played any role in how [the officer] should have operated his vehicle in simply making a turn." *Id.*

Though it involves a different subsection of the TTCA's limited waiver of immunity, the court's analysis in *Jenkins* is also instructive. There, the court

14

determined whether a K9 officer was engaged in a discretionary or ministerial act when his police dog attacked another officer after a search. *Jenkins*, 363 S.W.3d at 811–12. The court held that the officer had a ministerial duty to restrain the police dog while taking him away from the search site. *Id.* at 818–19. To explain its holding, the court compared the officer's handling of the police dog to driving a police vehicle:

> [L]ike the handling of a vehicle, different rules apply to the handling of a dog when it is being used by a governmental employee in the performance of a discretionary act—like pursuing a suspect. But as *Gibbons* illustrates, the use of the same tool can be discretionary in some circumstances and ministerial in others. An officer can exercise discretion in deciding when and how to use a potentially dangerous tool, and still have a ministerial duty in using the tool under other circumstances.

*Id.* at 818 (internal citations omitted).

Here, the City contends that Officer Gonzales was performing a discretionary duty at the time of the collision because she was transporting Caroline to the sobering center. But, as in the examples above, there is no evidence of any special circumstance affecting the transport. When the accident happened, Officer Gonzales was driving "very slowly," and there is no evidence the patrol car's emergency lights or siren were on. There is also no evidence that Caroline's condition or behavior required Officer Gonzales to violate traffic laws to quickly reach the sobering center. Officer Gonzales testified that Caroline was cooperative and did not resist being handcuffed or placed in the patrol car. When asked whether she recalled Caroline

"being disrespectful," "kicking the seat," or "doing anything to be disruptive while in the back of [the patrol car]," Officer Gonzales responded: "No, I do not." HPD's investigator and crash reconstructionist was asked whether there was "anything about that night that made Officer Gonzales feel the need to urgently get" Caroline to the sobering center, such as "any medical conditions" or "health risks." He answered "[n]o." He also saw no evidence in his investigation that Caroline was "being belligerent or uncooperative in any way." Officer Gonzales's act of merely navigating her patrol car on official, nonemergency business enroute to the sobering center did not involve any quickly evolving situation that required fast decisions or training-informed reactions. Her operation of the patrol car was therefore a ministerial act. *See Woods*, 933 S.W.2d at 308.

To be clear, we do not hold that an officer's operation of a police vehicle can never be discretionary if there is no emergency. "[C]ase law teaches that an officer may perform a discretionary act while driving even in circumstances that do not rise to the level of an emergency." *Collins*, 2014 WL 3051231, at *4. But the City has not shown that is the case here.

The City directs us to several cases for the proposition that law enforcement officers perform discretionary acts when transporting prisoners. Those cases are inapposite because the injury-causing act did not involve the use of a motor vehicle. Instead, they involve injuries sustained while extracting a prisoner from a cell,

16

during a breakdown of transportation, and while unloading prisoners, all of which are discretionary and distinguishable. *See Gonzales v. Kelley*, No. 01-10-00109-CV, 2010 WL 2650615, at *1–3 (Tex. App.—Houston [1st Dist.] July 1, 2020, no pet.) (mem. op.) (officers performed discretionary duties when extracting aggressive inmate from cell and transporting him to prison mental health unit on gurney with officer sitting on him after tasing him); *Wheelock v. Behrens*, No. 04-01-00312-CV, 2002 WL 112545, at *2 (Tex. App.—San Antonio Jan. 30, 2002, no pet.) (not designated for publication) (officer performed discretionary duty when unloading prisoner who fell after exiting transport van as he tried to step onto sidewalk); *Tex. Dep't of Crim. Just. v. Watt*, 949 S.W.2d 561, 566 (Tex. App.—Waco 1997, no writ) (officers were performing discretionary act when moving prisoner from one cell to another).

Still, the City urges that "[t]he inherent risks associated with transporting unpredictable, and potentially violent individuals in the close quarters of a moving vehicle are documented in the TTCA cases," pointing to this Court's decisions in *City of Sugarland v. Ballard*, 174 S.W.3d 259 (Tex. App.—Houston [1st Dist.] 2005, no pet.), and *Rivas v. City of Houston*, 19 S.W.3d 901 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). But in each of those cases, something happened during the transport that required an exercise of discretion. That something is missing here. In *Ballard*, an officer was transporting a juvenile who escaped the moving police

17

vehicle.[4] *Ballard*, 174 S.W.3d at 263. In *Rivas*, a paramedic was transporting a patient who was "becoming increasingly belligerent and would not remain in his restraints." *Rivas*, 19 S.W.3d at 902. In contrast, the City presented no evidence that Caroline tried to escape Officer Gonzales's patrol car or was an immediate danger to Officer Gonzales.

The City also argues that the ministerial act of ordinary driving was transformed into a discretionary act when we look back in time to the decision that placed Officer Gonzales at the intersection where the accident happened—the decision to take Caroline to the sobering center instead of to jail. According to the City, HPD General Order 500-11 and Texas Code of Criminal Procedure article 14.031, leave that decision to Officer Gonzales's discretion.

HPD General Order 500-11 confers an officer with certain discretion in handling publicly intoxicated persons. It states in pertinent part:

> When appropriate and available, officers are encouraged to use approved alternatives for handling persons who are in violation of Texas Penal Code, Section 49.02, Public Intoxication.[5] When circumstances meet the criteria outlined in this General Order, officers should divert publicly intoxicated individuals to the custody of a

---

[4] In addition, *Ballard* is not an official immunity case. *See City of Sugarland v. Ballard*, 174 S.W.3d 259, 264–67 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

[5] A person commits the offense of public intoxication if "the person appears in a public place while intoxicated to the degree that the person may endanger [herself] or another." TEX. PENAL CODE § 49.02(a).

responsible adult or the Houston Center for Sobriety (herein referred to as the "Center") as an alternative to arrest.

. . .

Public intoxication should not serve as the sole justification for incarceration and every effort should be made to divert eligible intoxicated persons to the custody of a responsible adult or the Center. . . .

Some persons may not be transported to the sobering center, even if they are intoxicated, but General Order 500-11 allows the law enforcement officer to determine whether an intoxicated person falls into any of the categories.[6]

As authority for its policy of allowing officers to determine how to handle an intoxicated person, General Order 500-11 cites Texas Code of Criminal Procedure article 14.031, which provides:

In lieu of arresting an individual who is not a child . . . and who commits an offense under Section 49.02, Penal Code, a peace officer may release the individual if: (1) the officer believes detention in a penal facility is unnecessary for the protection of the individual or others; and (2) the individual: (A) is released to the care of an adult who agrees to assume responsibility for the individual. . . .

Act of May 21, 2009, 81st Leg. R.S., ch. 311, 2009 Tex. Gen. Laws 832 (amended 2019) (current version at TEX. CODE CRIM. PROC. art. 14.031(a)). According to General Order 500-11, the sobering center in downtown Houston "is able to serve as the responsible adult" under article 14.031(a).

---

[6] There is no dispute that HPD's General Orders also leave to the officer's discretion the determination of the "safest, most direct route" to transport people to the sobering center.

Looking back in time, Officer Gonzales encountered Caroline in an impaired but compliant condition. While we agree that Officer Gonzales had discretion to decide whether to take Caroline to jail or to the sobering center, we disagree that Officer Gonzales's decision to take Caroline to the sobering center insulates every ministerial act that followed. That argument does not find support in the law.

As noted, in *Gibbons*, the accident occurred when the officer was investigating whether a nearby vehicle was stolen, but the court explained that the officer's "negligent operation of his vehicle was separate and apart from his action of checking the license plate." *Gibbons*, 150 S.W.3d at 886. And as in *Hulick*, the City's argument fails to focus on Officer Gonzales's conduct that allegedly caused Caroline's death—her failure to seat belt Caroline—focusing instead on the exercise of her discretion in deciding whether to take Caroline to jail or to the sobering center. *See Hulick*, 2022 WL 288096, at *4. That discretion had already been exercised and did not affect the performance of the transport. *See Boyattia v. Hinojosa*, 18 S.W.3d 729, 734–35 (Tex. App.—Dallas 2000, pet. denied) (deputy constable who was serving court papers could not convert that ministerial function into discretionary function by pointing to discretionary aspects of his task: "The accident did not occur as a result of the manner in which Hinojosa chose to serve court papers. Instead, it arose out of the manner in which he chose to park his county-owned car."). The City does not dispute that Officer Gonzales lacked discretion not to fasten Caroline's seat

20

belt under HPD policy and Texas law. *See Garza v. Harris Cnty.*, No. 14-10-00764-CV, 2011 WL 345651, at *3 (Tex. App.—Houston [14th Dist.] Feb. 1, 2011, pet. denied) (mem. op.) (where policy did not allow pursuit, choosing to pursue was ministerial act because there was no opportunity to deliberate or decide to pursue; the only choice was to obey orders).

The City's approach would create nearly blanket immunity for officers driving while on duty, contrary to the TTCA and the cases interpreting it. Limiting our focus to any decisions requiring some judgment before an accident would make a viable claim under the TTCA nearly impossible; it would, "in effect, merge the discretionary function element of the official immunity defense into the third element of the defense, whether the employee was acting within the scope of [her] authority. An official cannot be immune simply because [s]he is on duty." *Woods*, 933 S.W.2d at 308; *see also Hulick*, 2022 WL 288096, at *4.

For these reasons, we cannot agree that the City met its burden to establish that Officer Gonzales was entitled to official immunity. Consequently, the City failed to show as a matter of law that its governmental immunity remains intact, and we hold that the trial court did not err in denying the City's summary-judgment motion.

We overrule the City's sole issue.

**Conclusion**

We affirm the trial court's summary judgment order denying dismissal of the Nicolais' claim.

Sarah Beth Landau
Justice

On original submission, panel consisted of Justices Landau and Countiss and former Chief Justice Radack.

En banc reconsideration was requested. TEX. R. APP. P. 49.5.

The en banc court consists of Chief Justice Adams and Justices Kelly, Goodman, Landau, Hightower, Countiss, Rivas-Molloy, Guerra, Farris, and Radack.[7]

A majority of the justices of this Court voted in favor of reconsidering the case en banc.

Justice Landau, writing for the majority of the en banc court, joined by Justices Kelly, Goodman, Hightower, Rivas-Molloy, Guerra, and Farris.

Justice Countiss, dissenting with separate opinion, joined by Chief Justice Adams and Justice Radack.

---

[7] The Honorable Sherry Radack, Senior Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment. *See* TEX. R. APP. P. 41.2(a).